## STATE *v.* PARKER.

A count in an indictment for conspiracy is bad, which merely charges that the defendants unlawfully conspired to cheat and defraud D P of his property.

So is a count in which it is added that the accused, in pursuance of such conspiracy, did fraudulently, &c., cheat and defraud said D P of his money, &c. In conspiracy it must be stated that the act conspired to be done is in itself unlawful, or that it is to be done by unlawful means; and, in the last case, the means must be stated, that their unlawfulness may be seen.

Where the words used in an indictment to describe an offense are commonly used in a sense which does not necessarily import an offense, and they are used without any qualification, the indictment will be bad, though the same words, in a more strict and technical sense, may describe a criminal act.

The words "cheat and defraud" are commonly used to designate acts which are fraudulent in morals and conversation, but to which the law imputes no illegality; as puffing a man's goods, &c. Alone, and without qualifying words, they are insufficient to describe an offense.

A count setting forth a conspiracy to cheat and defraud a person of his money, by fraudulently selling property for a price greatly exceeding its value, and that the respondents, in pursuance of said conspiracy, falsely and fraudulently made to him certain representations, each of which is distinctly alleged to be false to the knowledge of the respondents, and thereby did cheat, &c., was held to be sufficient.

A count alleging that the respondents, by means of false and fraudulent representations of the value of certain property, induced another person to buy and pay a large price for it, when it was of little or no value, and so cheated and defrauded him, contrary to law, was held bad on demurrer, but was not quashed on motion.

IN this indictment the first count alleges that on, &c., the defendants unlawfully conspired, &c., fraudulently to cheat and defraud D. Page of his money, &c., and, in pursuance of said conspiracy, did falsely and fraudulently cheat and defraud said D. Page of a large amount of his property, &c., contrary to law, &c.

The fourth count alleges that on, &c., the defendants unlawfully, &c., conspired to cheat D. Page of a large amount of his property, &c., of the value of $10,000, contrary to law, &c.

The second count alleged that the defendants on, &c., with intent to cheat and defraud D. P., did unlawfully, &c., conspire, &c., unlawfully, &c., to cheat and defraud said D. P. of his money, &c., by falsely, &c., selling to him certain real property, &c., claimed and owned by said D. M. P., namely (describing the property): and, in pursuance of said conspiracy, &c., the defendants did falsely, &c., represent to D. P. that, &c. (setting forth various representations of the character, value, use, &c., of the property, and of the profits to be derived from it, and that J. R., one of the defendants, was anxious to become a joint purchaser of the property with D. P.); and the defendants, in pursuance of said conspiracy, and by means of said false, &c., representations, did thereafter, on, &c., effect a sale of said property from D. M. P. to said D. P., at a price greatly exceeding its value: to wit., &c., and thereby (the said D. P. not knowing of said conspiracy, or of said fraudulent intent, but believing the same representations to be true, and being deceived thereby) the defendants unlawfully, &c., by the means aforesaid, did, on, &c., obtain and procure from said D. P. money, &c., of great value: to wit., &c., of the goods and property of said D. P.; whereas, in truth, &c. (here

all the representations before stated were distinctly and specifically negatived), and said real estate, &c., were of little or no value, as the defendants well knew, and have since remained so; and the defendants, in manner aforesaid, did cheat and defraud said D. P. of his said money, &c., contrary to law, &c.

The third count alleged that on, &c., the defendants did unlawfully, &c., and with intent to cheat and defraud D. P., represent to him that certain real estate, &c., claimed and owned by D. M. P., were of great value: to wit., &c., and with intent to cheat and defraud said D. P., by means of said false, &c., pretenses and representations, did willfully, &c., influence, induce, &c., said D. P. to buy of said D. M. P. said real estate, &c., and to pay D. M. P. $10,000 therefor; whereas, said property, &c., was of little or no value, and so said defendants did cheat and defraud D. P. of said $10,000, contrary to law, &c.

The defendants moved that the indictment should be quashed.

*C. W. Rand*, Solicitor, for the State.

*Woods & Bingham*, and *Felton*, for the respondents.

BELL, C. J.   The second count is in the general form of the precedents given in Wharton's Precedents 347, said to be from *People* v. *Barrett*, 1 Johns. 66; 349, said to be from *Rex* v. *Gompertz*, 11 Jur. 204; 355, said to be from *Commonwealth* v. *Warren*, 6 Mass. 74; 354; 362; Chit. Cr. Law 949–951; Cr. Cir. Com. 282; Cr. Cir. As. 129; 4 Went. Pl. 80, 85, 89, 92; and we are not prepared to say it is not sufficient, though we think it admits of improvement, by referring, in the charge of the conspiracy, to the fraudulent means afterward alleged to be used.

The first and fourth counts do not appear to us to be sustainable. To constitute an indictable conspiracy, there must be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to effect some object, not in itself criminal or unlawful, by criminal or unlawful means.   *Commonwealth* v. *Hunt*, 4 Met. 111.   Not that those means must appear to be criminal, as seems to be held in *Commonwealth* v. *Shedd*, 7 Cush. 514, but that it will be enough if they are corrupt, dishonest, fraudulent, and immoral, and, in that sense, illegal.   *State* v. *Burnham*, 15 N. H. 403.

In an indictment for a conspiracy to do an act which is a well-known and recognized offense at common law, the object of the conspiracy, as the rule is laid down in *Commonwealth* v. *Eastman*, may be described by the general terms by which it is familiarly and technically known.   If it is not an offense at common law, but only by statute, the purpose of the conspiracy must be set forth in such a manner as to show that it is within the terms of the statute.   If the purpose of the respondents was lawful, the illegality of the means must be explained by proper statements.   *State* v. *Burnham*, above cited.   In such a case it will not be sufficient to allege in general terms, however strong, that the purpose to be effected was

criminal or unlawful, nor that the means to be used, where their criminal or unlawful character is relied upon, were malicious or fraudulent, or unlawful or criminal; but those means must be stated in such terms that the court may see that they are unlawful at common law, or by virtue of some statute.

It is never enough that the purpose or the means are so described that they may be unlawful. If that is left uncertain, the indictment is fatally defective. It must appear to the court that, if the facts alleged are proved as they are stated, without any additional fact or circumstance, there can be no doubt of the illegality of the conduct charged, nor of its criminality.

In many cases the law has its technical terms, descriptive of actions or of motives, which are not generally used in any other sense; and those terms, if used in an indictment, will, of course, be read and understood in that legal and technical sense only. But there are other terms that have in the law a narrow and restricted sense, which are in general use in the community in a much broader and looser signification. Such terms may properly constitute a part of the description of an offense in an indictment, but they must be used in connection with such qualifying language or description, as will show that they are used in their technical sense and no other. Without such qualification, or, as it is said in *State* v. *Burnham,* above cited, unless explained by proper statements, it is left in doubt if the acts charged are punishable, and the count is fatally defective.

The first and fourth counts charge that the defendants conspired to cheat and defraud, and the first adds, that they did, accordingly, cheat and defraud D. P., &c.; but neither sets out the pretenses or other means by which they agreed to effect or did accomplish their object. The question then is, simply, whether the term "cheat and defraud" necessarily imports an act forbidden by the law. And we think that, in their general and popular signification, they include every kind of trick and deception, every false representation and intimation, every suppression and concealment of any fact or opinion by which a party may be induced to part with his property for less than its value, or to give more than its worth for the property of another, while the law condemns such false statements as relate to some fact material to the value of the property, or which the party is under special obligation to state truly, or the concealment of something which the party is bound to· communicate, and never merely false opinions of the value of the property offered for sale, where there is no special confidence, or relation, or influence between the parties. That there is such a well-marked distinction, we may cite 1 Story's Eq. Jur., secs. 194, 197, 199, and 201, and 2 Kent's Com. 484.

It follows from this principle, that the term "cheat and defraud" alone does not describe with certainty any offense punishable by law.

The decisions on the sufficiency of counts for conspiracy in these forms are much in conflict. The most recent treatises on the criminal law support the doctrine that, in indictments for a conspiracy to cheat and defraud another of his property, it is not necessary to

make any allegation as to the means by which it is concerted to accomplish the fraud.

This doctrine is founded on certain recent decisions of the English courts, and some courts in this country, which have followed their lead. The first of these, on the authority of which the others have been decided, is *King* v. *Gill,* 2 B. & A. 204, in 1819. In that case the law is asserted to be as it is there held, without reasons assigned, without any citation of authority, and without any discussion of general principles. *Abbott,* C. J., says : "It is objected that the particular means and devices are not stated. It is, however, possible to conceive that persons might meet together, and might determine and resolve that they would, by some trick or device, cheat and defraud another, without having at that time fixed and settled what the particular means and devices should be. Such a meeting and resolution would, nevertheless, constitute an offense. If, therefore, a case may be reasonably suggested in which the matters here charged would, if there were nothing more, be an offense against the law, it is impossible, as it seems to me, to conclude that the law should require the particular means to be set forth. The offense of conspiracy may be complete, although the particular means are not settled or resolved on at the time of the conspiracy." The other judges merely repeat these views.

It is undoubtedly true that it is possible to conceive a conspiracy to cheat, without the means being agreed upon. The difficulty is in conceiving that such a meeting and resolution, if there is nothing more, constitutes an offense. So far is it from being true, that, if it is possible to conceive a case where the facts alleged in an indictment may constitute an offense, that the indictment is, therefore, good, that the reverse is true. If it can be reasonably conceived that the facts alleged in the indictment may all be true, yet no offense have been committed, the indictment is clearly bad. If any one circumstance required by the law to constitute an offense is omitted, so that what is alleged may or may not be an offense, according as it is or is not proved that other facts not alleged were connected with it, the indictment can not be sustained. *State* v. *Beasom,* 40 N. H. 373. Now, as we understand the law, the conspiracy to cheat and defraud is or is not an offense, just as the cheat or fraud is accomplished by means which the law condemns, or by means which, though condemned by sound morals, are not condemned by the law. Mere puffing recommendations of the quality or value of a man's goods, the profits that may be made of them, and the like, are not such frauds as the law condemns, so long as there is no misstatement of any fact, or abuse of confidence founded on special relations, however grossly the buyer, relying on these representations, may have been cheated and imposed upon ; and no sale can be objected to on the ground of such frauds. The concealment of a fact essential to the fairness of a transaction, to the immense injury of a seller, is no fraud in law, if, under the circumstances, the buyer had a legal right to avail himself of his superior information.

If, in such case, two or more persons combined or conspired in such a cheat or fraud, for such it is in morals and common under-

standing, they could not be convicted of a conspiracy to defraud; yet an indictment in the form used in *King* v. *Gill* would be true in their case. The defect is, that the indictment does not describe the offense with such reference to the means to be used, as to show that it must be a fraud in law as well as in fact.

It is on the feeble and unsound basis of this case that the subsequent decisions of this class, in England and in this country, have rested.

After an interval of more than twenty years, the same question again came up for decision in *Queen* v. *Parker*, 3 A. & E. (N. S.) 292, and in *Queen* v. *Kenrick*, 5 A. & E. (N. S.) 49. The last was an indictment for a conspiracy to obtain money on false pretenses. The third count charged the offense in general terms, as a conspiracy to cheat the prosecutor of his money, without setting out the pretenses. The conspiracy and pretenses were proved. And it was held that this count was sufficient, and that it described an indictable offense. Lord Denman remarked that the words " cheat and defraud " are words known to the law, and, in giving his opinion, he said : "This form of indictment was formally questioned in *Rex* v. *Gill*, 2 B. & A. 204, and was, upon discussion, held to be good ; nor has this decision been overruled." He adds : " There have not been wanting occasions when learned judges have expressed regret that a charge so little calculated to inform a defendant of the facts intended to be proved upon him, should be considered as well laid. All who have watched the proceedings of courts are aware that there is danger of injustice from calling for a defense against so vague an accusation ; and judges of high authority have been desirous of restraining this generality within some reasonable bounds." " The expedient now employed in practice of furnishing defendants with a particular of the acts charged upon them, is probably effectual for preventing surprise and unfair advantages."

The opinion that the words " cheat and defraud " are words known to the law, is of no importance, if they are generally used in a broader sense, so that they do not necessarily charge an offense. It is quite evident that the decision is rested on the decision of *Rex* v. *Gill*.

In the course of the next four or five years occurred the cases of *Queen* v. *Blake*, 6 A. & E. (N. S.) 126 ; *Queen* v. *King*, 7 A. & E. (N. S.) 782 ; *Queen* v. *Gompertz*, 9 A. & E. (N. S.) 824 ; and *Sidserf* v. *Queen*, 11 A. & E. (N. S.) 292 ; in which the same doctrine was held, upon the authority of *King* v. *Gill*. These cases have been followed in Pennsylvania and some other States.

We are constrained to regard these decisions, which are not authorities here, as of very little weight, because the reasons assigned for the leading case, on which all the others depend, (if reasons they can be called) are weak and unsound, and none better have been suggested in any of those that followed ; because it appears by Lord Denman's opinion in *Queen* v. *Kenrick*, 'that eminent judges have regretted the decision as dangerous to the accused ; because the courts have found themselves compelled to supply the defects of such indictment by bills of particulars, which

is conclusive that, in the opinion of such judges, the indictments did not state the crime or offense so " fully and plainly, substantially and formally," (N. H. Bill of Rights, sec. 15) that a party ought to be put upon his trial, until its defects were supplied. We infer from the repeated instances in which the courts have been called to reaffirm these decisions, that the judgment of the bar revolts at them as unsound, and we draw the same inference from the fact that out of the decisions we have found since 1819, no less than four are in conflict with the cases we have cited. These are *Rex* v. *Richardson*, 1 M. & R. 402, in 1825 ; *Rex* v. *Fowle*, 4 C. & P. 592, in 1830 ; *Rex* v. *Buis*, 1 A. & E. 327, in 1834, and *Rex* v. *Peck*, 9 A. & E. 686.

The same question has arisen in the courts of Massachusetts, Maine, New-York, and Michigan, and has been decided, with reference to the English decisions, as we think, more in accordance with the general principles of the law.

It has there been decided that the words " cheat and defraud" unexplained do not necessarily import any thing forbidden by law, or unlawful, because there are certain cheats and frauds, properly so denominated in the language of ethical writers, and in conversation, which the law excuses and does not condemn. *Commonwealth* v. *Eastman*, 1 Cush. 189 ; *Commonwealth* v. *Shedd*, 7 Cush. 514; *State* v. *Hewitt*, 31 Me. 396 ; *State* v. *Roberts*, 34 Me. 320 ; *Alderman* v. *People*, 4 Mich. 414.

So it has been held that an indictment which charges a conspiracy to cheat and defraud another of his money or goods without describing the mode of effecting the fraud, or the concerted means of carrying it into effect, does not describe an unlawful act, and is consequently defective and insufficient. See authority last cited, and *State* v. *Bartlett*, 30 Me. 132 ; *State* v. *Ripley*, 31 Me. 386 ; *Lambert* v. *People*, 9 Cow. 578.

The third count does not allege a case of conspiracy, but sets out a case of deceit by false pretenses. It describes no offense at common law, and it is not alleged *contra formam statuti*, which is a fatal defect on demurrer. 1 Hale P. C. 172, 189, 192 ; 2 Hawk. ch. 25, sec. 116 ; 1 Salk. 370 ; 2 R. & R. 38 ; Whart. Cr. L. 104 ; Whart. Prec. 12 ; Arch. C. P. 29. But the court will not quash an indictment on a statute, because it does not conclude against the form, &c., but leave the defendant to demur. 1 Ch. Cr. L. 249 ; 2 Strange 702 ; *Rex* v. *Brotherton*, Bac. Abr., Indictment, K.

It is by no means certain that the indictment would be held good under our statute, on other grounds, but the defects are not of a kind which the court incline to examine on this motion.

The first and fourth counts are quashed. The third is bad on demurrer. The second is held sufficient.