State *v.* Keach et al.

---

\* STATE OF VERMONT *v.* WILLIAM KEACH, DUDLEY KEACH, ELIJAH
D. WILCOX AND AMASA H. GROVENOR.

*Conspiracy. Indictment. Pleading.*

It may now be regarded as a settled rule in the law respecting conspiracy that an indictment for the offence shall state, with as much certainty as the nature of the case will admit, the facts which constitute the crime intended to be charged, and that it must be so far precise that the party may know what charge he has to answer, and be able to plead his acquittal or conviction upon it to a future indictment on the same facts.

An indictment for this offence must contain allegations setting forth the means proposed to be used to accomplish the purpose agreed upon; not because it is necessary to set forth the overt acts in support of the charge of a conspiracy, but because it must appear from the indictment that the object of the conspiracy was criminal.

\* This case was heard at the January Term, 1867.

State *v.* Keach et al.

Counts in which the purpose charged was alleged to be the obtaining and acquiring of property from others, and to cheat and defraud them of such property, and in which the *means* agreed upon for accomplishing this purpose were described as being " by divers false pretences, and subtle means and devices," were *held* insufficient on demurrer; the *object* of the conspiracy being not necessarily criminal, and the description of the *means* being too vague and general.

Counts containing the additional charge, also, that it was the purpose of the accused, after obtaining possession of the property, to abscond out of this state with it, also *held* defective.

INDICTMENT for a conspiracy in five counts, to which the respondents filed general demurrer, on which the court, at the April Term, 1866, PIERPOINT, Ch. J., presiding, *pro forma*, adjudged the indictment sufficient and the respondents guilty,—to which decision the respondents excepted.

The indictment was as follows, omitting some formal parts and repetition of names :

I. " That William Keach and  *    *    *    *    being evil disposed persons, and seeking to get their living by various subtle, fraudulent, and dishonest practices, at Burlington, in said county of Chittenden, to wit : on the 1st day of November, A. D. 1864, with force and arms, together with divers other evil disposed persons, unlawfully, fraudulently, and deceitfully did combine, conspire, confederate and agree together, by divers false pretences, and subtle means and devices, to obtain and acquire to themselves of and from Farnham Thompson,  *    *    *    *    divers large quantities of goods, property and merchandise, of the goods, property and merchandise of the said Thompson and  *    *    *    *    and to cheat and defraud them thereof, to the great damage of the said Thompson,  *    *    *    *    to the evil example of all others in like cases offending, and against the peace and dignity of the state.

II. " That the said William Keach,  *    *    *    *    being evil disposed persons, and seeking to get their living by various subtle, fraudulent and dishonest practices, on the 1st day of November, A. D. 1864, with force and arms, at Burlington, in said Chittenden county, together with divers other evil disposed persons, unlawfully, fraudulently and deceitfully did combine, conspire, confederate and agree together, by divers false pretences and subtle means and devices to obtain and acquire to themselves of and from the said Farnham Thompson,  *    *    *    *    divers large quantities of goods, property and merchandise, of the goods, property and merchandise of the said Thompson,  *    *    *    *    and to cheat and defraud them thereof ; and that the said William Keach,

State *v.* Keach et al.

\* \* \* \* then and there, together with said other evil disposed persons, in pursuance of such unlawful, fraudulent and deceitful combination, conspiracy, confederacy and agreement, and by said false pretences and subtle means and devices, did obtain and acquire to themselves of and from said Thompson, \* \* \* divers large quantities of the goods, property and merchandise of the said Thompson, \* \* \* \* of great value, to wit, of the value of five thousand dollars, and did then and there thereby cheat and defraud them thereof, to the great damage of the said Thompson, \* \* \* \* to the evil example of all others in like cases offending, and against the peace and dignity of the state.

III. " That the said William Keach, \* \* \* on the 1st day of November, A. D. 1864, at Burlington, in the county of Chittenden, aforesaid, with force and arms, together with divers other evil disposed persons, unlawfully, fraudulently and deceitfully did combine, conspire, confederate and agree together, by divers false pretences and subtle means and devices, to obtain and acquire, the said William Keach and Dudley Keach, of and from divers persons who are to the jurors, aforesaid, unknown, divers large quantities of the goods, property and merchandise of the said persons, who are to the jurors, aforesaid, unknown, and to cheat and defraud them thereof, to the great damage of the said persons who are to the jurors, aforesaid, unknown, to the evil example of all others in like cases offending, and against the peace and dignity of the state.

IV. " That the said William Keach, \* \* \* wickedly and unjustly devising and intending the said Farnham Thompson, \* \* \* \* to defraud and cheat of their goods, property and merchandise, on the first day of November, A. D. 1864, at Burlington, in the county of Chittenden, aforesaid, did falsely and fraudulently conspire, combine, confederate and agree among themselves to obtain and get into their hands and possession, of and from the said Thompson, \* \* \* \* their goods, property and merchandise, upon trust and credit, and then to abscond out of the said state of Vermont, with said property, and defraud them thereof. And that the said William Keach, \* \* \* \* in pursuance of and according to the conspiracy, combination, confederacy and agreement, aforesaid, so as aforesaid had, did then and there falsely and fraudulently obtain and get into their hands and possession, of and from the said Thompson, \* \* \* \* goods, wares and merchandise to the value of five thousand dollars, upon trust and credit, and in further pursuance of the conspiracy, combination and confederacy, aforesaid, so as aforesaid had among themselves, they, the said William Keach, \* \* \* \* did afterwards, to wit, on the 1st day of December, A. D. 1864, take and carry away said goods, property and merchandise out of the State of Vermont, and did abscond and go out of the State of Vermont, and did then and there, in manner aforesaid, cheat and defraud the said Thompson, \* \* \* \* of their goods, property and

merchandise, aforesaid, to the evil example of all others in like cases offending, and against the peace and dignity of the State."

The fifth count charges the respondents with a conspiracy "to obtain and get into their hands and possession" from certain persons named, with intent to cheat and defraud such persons, the goods, &c., of such persons, " and then to abscond out of the state of Vermont with said property and defraud them thereof," and also charges acts done in pursuance of the conspiracy and in execution of it.

*Hard & Shaw*, for the respondents.

————, for the state.

The opinion of the court was delivered by

KELLOGG, J. It may now be regarded as a settled rule in the law respecting conspiracy that an indictment for the offence shall state, with as much certainty as the nature of the case will admit, the facts which constitute the crime intended to be charged, and that it must be so far precise that the party may know what charge he has to answer, and may be able to plead his acquittal or conviction upon it to a future indictment on the same facts. In *Regina* v. *Kenrick*, 5 Ad. & El., N. S., 61, (48 E. C. L. R.,) Lord DENMAN, Ch. J., says that the offence of unlawfully conspiring has been held to consist in the conspiracy, and not in the facts committed for carrying it into effect; and that the charge has been held to be sufficiently made in general terms describing an unlawful conspiracy to effect a bad purpose; but that there have not been wanting occasions when learned judges have expressed regret that a charge so little calculated to inform a defendant of the facts intended to be proved upon him should be considered by the law as well laid; and that there has been a desire to restrain " its generality within some reasonable bounds." A disposition to discountenance the practice of charging the offence of conspiracy in general terms is clearly indicated in the more recent English cases, and especially in the cases of *The Queen* v. *Peck et al.*, 9 Ad. & El. 686, (36 E. C. L. R., 240,) and *Regina* v. *King*, 7 Ad. & El., N. S. 782, (53 E. C. L. R.,) and the same disposition has

been very strongly indicated in the leading American cases, *Lambert* v. *The People*, 9 Cowen, 578; *Commonwealth* v. *Hunt et al.*, 4 Met. 111; *Commonwealth* v. *Eastman et al.*, 1 Cush. 189; *Commonwealth* v. *Shedd et al.*, 7 Cush. 514; *State* v. *Roberts*, 34 Maine, 320; *Hartmann* v. *Commonwealth*, 5 Barr. 60.'

The gist of the offence in a charge of conspiracy consists in the act of conspiring together to accomplish some unlawful purpose, or to accomplish some object not in itself criminal by unlawful means; and, therefore, it is not necessary to charge the execution of the unlawful agreement. The conspiracy is the complete criminal act, or the thing which constitutes the crime; and, therefore, if the execution of the unlawful purpose is averred, it is by way of aggravation, and proof of it is not necessary to a conviction. Accordingly the jury may find the conspiracy, and negative the execution, and the conviction will be good. *State* v. *Noyes et al.*, 25 Vt. 415; *Commonwealth* v. *Hunt et al.*, *ubi supra.* The indictment ought, consequently, to be good, independently of the overt acts done in pursuance of the conspiracy, and should, either by averring the unlawful purpose of the conspiracy, or the unlawful means by which it was intended to accomplish a lawful purpose, or a purpose not of itself criminal, set out an offence complete in itself without the aid of any averment of illegal acts done in pursuance of such an agreement; and an illegal combination, imperfectly and insufficiently charged in the indictment, will not be aided by averments of overt acts done in pursuance of it. The adjudged cases uniformly recognize the rule that a general allegation that two or more persons conspired to effect an object criminal in itself, as to commit a misdemeanor or felony, is sufficient even though the indictment omits all charges of the particular means to be used; and the cases are now equally uniform in holding that if the agreement or combination be to do an act or to effect an object not criminal, by the use of unlawful means, a general charge of a conspiracy to effect the object is not sufficient, and the charge of such a conspiracy must be accompanied with a particular statement of the means by which the object of the conspiracy was to be effected, so that those means may appear to be criminal, or the indictment will be bad. It is also settled by the more recent cases that a charge of a conspiracy " to cheat and defraud" one of his goods, is insufficient

as not necessarily importing a criminal offence, but the means by which this purpose was to be effected must be set forth, so that it may be seen that it was a conspiracy to effect the proposed object by *illegal* means. This is directly held in the cases of *Commonwealth* v. *Hunt et al.,* 4 Met. 111, and *Commonwealth* v. *Eastman et al.,* 1 Cush. 189, and *State* v. *Roberts,* 34 Maine, 320. These words ( " *cheat and defraud,*" ) have no signification which is exclusively criminal, or which may be regarded as technical or definitely' settled. It is not actionable to accuse one of *cheating* another, and there are many *cheats* for which there is only a civil liability ; and the word *defraud* has no more specific or settled signification than the word " *cheat.*" The terms are ambiguous, and are as well applicable to injuries resulting from civil contracts as to those inflicted wholly by breach of criminal law. The purpose of· " cheating and defrauding" may embrace only such frauds as are the subject of a civil action, and does not necessarily import the commission of any known common law or statute offence. If this purpose is punishable at all as a crime, it is only when the cheat is effected by false pretences, or false tokéns, or the like means ; and, to make such a purpose criminal, the conspiracy must be to cheat and defraud in a mode made criminal by statute. The indictment must, therefore, contain allegations setting forth the means proposed to be used to accomplish the purpose agreed upon ; not because it is necessary to set forth the overt acts in support of the charge of a conspiracy, but because it must appear from the indictment that the object of the conspiracy was criminal.

By these principles, the sufficiency of the indictment in this case is to be tested. This indictment contains five counts. The first count states the object or purpose of the conspiracy to be the obtaining and acquiring by the respondents from certain persons named, divers large quantities of goods, property and merchandize belonging to such persons, " by divers false pretences and subtle means and devices," and " to cheat and defraud them thereof." The second count charges the respondents with a. similar conspiracy, substantially in the same terms, with the addition of allegations setting forth acts done in pursuance of the conspiracy and in execution of it. The *third* count is, in substance and form, similar to the first count, the only variation consisting in the charge that the conspiracy was

State *v.* Keach et al.

that two of the respondents, who are named, should " obtain and acquire from divers persons, who are to the jurors unknown, divers goods," &c., instead of naming the persons who were to be cheated and defrauded. The fourth count charges the respondents with a conspiracy " to obtain and get into their hands and possession" from certain persons named, with intent to cheat and defraud such persons, " their goods, property and merchandise upon trust and credit, and then to abscond out of the state of Vermont with said property, and defraud them thereof," and also alleges acts done in pursuance of this conspiracy and in execution of it. The fifth count charges the respondents with a conspiracy " to obtain and get into their hands and possession" from certain persons named, with intent to cheat and defraud such persons, the goods, &c., of such persons, " and then to abscond out of the state of Vermont with said property, and defraud them ( the persons named ) thereof," and also charges acts done in pursuance of the conspiracy and in execution of it. The purpose of the conspiracy charged in the first, second and third counts is alleged to be the obtaining and acquiring by the respondents from other persons, of property belonging to such persons, and to cheat and defraud them of such property, and the *means* agreed upon for the accomplishing of this purpose are described as being " by divers false pretences and subtle means and devices." The obtaining and acquiring of the property of other persons, with an intent to cheat and defraud them of such property, not being in law necessarily a crime, the purpose and object of the conspiracy charged in these three counts cannot be considered criminal independent of the means agreed to be employed to effect this purpose and object, and it must therefore appear from the indictment that the means designed to be used in promotion of the object intended were of a criminal character ; in other words, if any criminal offence is charged, it must consist in the means designed to be employed. The obtaining of property by the use of false pretences or tokens is made a crime, subjecting the perpetrator to punishment by statute ; but in an indictment for that crime the particular false pretence or token made use of must be fully and particularly described. In these counts, the means are described only as being " false pretences " or " devices." This is a mere averment of the quality or character of

the acts constituting the offence, without specifying or describing those acts in such a manner that the accused might know what acts were intended to be proved against them in support of the charge. This description of the means is too vague and general, and is not in accordance with the established rules of criminal pleading. This was expressly ruled in *State* v. *Roberts*, 34 Maine, 320, and in this particular we regard these three counts as defective. The fourth and fifth counts of the indictment allege the purpose of the conspiracy to have been " to obtain and get into the hands and possession " of the accused, from certain persons named, their goods, property and merchandise, " and then to abscond out of the state of Vermont with said property, and defraud them thereof." Each of these counts contains allegations charging the accused with overt acts done in pursuance of the conspiracy and in execution of it, but the only substantial variation between these two counts is in the allegations setting forth these overt acts. For the reasons which have been already indicated, we do not think that the conspiracy itself, as it is alleged in either of these two counts, is shown to have been criminal. The only substantial variation in the statement of the purpose of the conspiracy as set forth in these counts, from the statement of the purpose of the conspiracy as set forth in the three counts which have been disposed of, is in the allegation that it was a part of the purpose of the conspiracy charged that the accused, after obtaining possession of the property, should abscond out of this state with it; but the addition of this statement does not show that the purpose of the conspiracy as thus described was criminal. It is not unlawful or criminal either to obtain property on trust or credit, or, after it is obtained, to abscond out of the state of Vermont with it, and neither of these counts alleges that any false pretense was agreed upon or intended to be used in effecting the purpose of the conspiracy. The conspiracy itself, as set forth in these two counts, not being shown to have necessarily been criminal, and no act necessarily unlawful being charged to have been done in pursuance of it, each of these counts must be held insufficient.

Judgment of the county court, *pro forma*, adjudging the indictment sufficient, reversed, and judgment rendered that the indictment is insufficient.