## Case No. 16,636.

### UNITED STATES v. WALSH.

[5 Dill. 58.] [1]

Circuit Court, E. D. Missouri. 1878.

CONSPIRACY TO DEFRAUD THE UNITED STATES — REVISED STATUTES, SECTION 5440, CONSTRUED — REQUISITES OF INDICTMENT.

1. The Revised Statutes (section 5440), in respect of the crime of conspiracy to defraud the United States, change, in material respects, the offence of conspiracy as it existed at common law, and every ingredient of the offence must be clearly alleged.

[Cited in U. S. v. De Quilfeldt, 5 Fed. 279; U. S. v. Milner, 36 Fed. 891; U. S. v. Cassidy, 67 Fed. 705; Bannon v. U. S., 156 U. S. 464, 15 Sup. Ct. 469.]

[Cited in Com. v. Ward, 92 Ky. 161, 17 S. W. 283.]

2. An indictment charging an alleged conspiracy to defraud the United States to consist in "certifying that certain false and fraudulent accounts and vouchers for materials furnished

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

for use in the construction of the United States custom-house and post-office in the city of St. Louis, and for labor performed on the said building, were true and correct," is bad for uncertainty.

On motion by the defendant [Thomas Walsh] to quash the second count in the indictment, the first count having been abandoned by the government. The second count is as follows: "And the jurors aforesaid, on their oaths aforesaid, do further present that, on the said 30th day of November, in the year of our Lord 1874, the said Thomas Walsh, being then and there superintendent of the construction of the new St. Louis custom-house and post-office, then in process of erection in the city of St. Louis, within said district, and the said William K. Patrick, being then and there assistant superintendent of construction of said building then in process of erection as aforesaid, did, at said district, conspire, combine, confederate, and agree together, and with certain other persons to said jurors unknown, to defraud the United States out of a large sum of money, to-wit, the sum of $50,000, by certifying, he, the said Thomas Walsh, as superintendent as aforesaid, and he, the said William K. Patrick, as assistant superintendent as aforesaid, that certain false and fraudulent accounts and vouchers for materials furnished for use in the construction of said new custom-house and post-office, and for labor performed on said building, were true and correct; that afterwards, to-wit, on the 1st day of December, in the year aforesaid, in pursuance of and in order to effect the object of said conspiracy, combination, confederacy, and agreement so had as aforesaid, the said Thomas Walsh, of said district, as superintendent as aforesaid, did present to one John F. Long, then and there disbursing agent for the said new custom-house and post-office, then in process of erection in said city of St. Louis, within said district, certain written and printed papers, then and there purporting to be true and correct pay-rolls of mechanics and laborers employed on the said custom-house and post-office during the month of November, in the year of our Lord 1874, which said purported pay-rolls were then and there vouchers for the payment to be made by him, the said John F. Long, as disbursing agent as aforesaid, to certain persons to said jurors unknown, of a large sum of money then and there belonging to the United States, to-wit, $21,862.02, contrary to the form of the statute of the United States, in such case made and provided, and against their peace and dignity." The indictment is founded upon section 5440 of the Revised Statutes of the United States, which is as follows: "If two or more persons conspire either to commit any offence against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than $1,000 and not

more than $10,000, and to imprisonment not more than two years." The question for consideration is, whether the second count of the indictment is sufficiently precise, specific, and certain in its statement of the offence to sustain a judgment on a verdict of guilty, if such a verdict should be found.

W. H. Bliss, U. S. Dist. Atty.

D. P. Dyer, David Wagner, and William Patrick, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. We have examined all the cases cited in the arguments of the respective counsel, and many others, and we have considered the propositions they have advanced, and now proceed to announce, without much elaboration, the conclusions we have reached. At common law the offence of conspiracy was complete whenever the unlawful concert and agreement was entered into and concluded, although nothing was done in pursuance thereto, or to carry it into effect. The gist of the offence was the unlawful agreement. The offence of conspiracy at common law being complete without an overt act, it was one of the few cases in which the law undertook to punish criminally an unexecuted intent or purpose to commit a crime. But such is the settled doctrine of the common law, and hence, in an indictment for conspiracy at common law, it is not necessary to allege any overt act, or to prove it, if it is alleged.

It is a settled doctrine in our jurisprudence that there are no common law offences against the government of the United States. An act or an omission, to be criminally punished in the federal courts, must be declared to be an offence by an act of congress. It follows that the act of congress must constitute the sole basis of the offence of conspiracy, and the section (Rev. St. § 5440) on which this indictment is founded, changes, in material respects, the offence of conspiracy as it existed at common law. This section not only makes the unlawful agreement to do the prohibited act essential to a completed offence, but also "that one or more of the parties to such conspiracy shall do some act to effect the object thereof." These considerations are important in determining the weight due to the English cases on the subject of the particularity and certainty necessary in indictments for conspiracy. The English courts have sustained indictments for conspiracy which were framed in the most general manner, and without alleging any overt acts. Rex v. Gill, 2 Barn. & Ald. 204. This laxity and departure from principle have been regretted in the more recent cases in that country, and have been sought to be remedied by giving to the defendant, where the count is general and the charge indefinite, the right to call for a "bill of particulars." Examples of this may be found in Reg. v. Stapylton, 8 Cox, Cr. Cas. 69; Rex v. Hamilton, 7 Car. & P. 448, and some other cases.

We have no such anomalous practice in this country, and the settled doctrine of the American courts is, that an indictment for conspiracy, like all other indictments, "must inform the defendant of the nature and cause of the accusation" (Const. U. S. 6th Amend.), and must set forth the offence with clearness and certainty. "Every ingredient of which the offence is composed must be accurately and clearly alleged." U. S. v. Cook, 17 Wall. [84 U. S.] 174. And in the recent case of U. S. v. Cruikshank, 92 U. S. 542. 557, these principles were applied by the supreme court of the United States to the case of an indictment for conspiracy. The judgment of court in the case last cited was that the indictment was bad for vagueness and generality, and because it lacked the certainty and precision required by the established rules of criminal pleading. In delivering the opinion of the court, the chief justice said: "The accused has, therefore, the right to have a specification of the charge against him, in order that he may decide whether he should present his defence by motion to quash, demurrer, or plea; and the court, that it may determine. whether the facts will sustain the indictment." And the supreme court cites and approves the decisions in New Hampshire (State v. Parker, 43 N. H. 83); Vermont (State v. Keach, 40 Vt. 118); Michigan (Alderman v. People, 4 Mich. 414); and Maine (State v. Roberts, 34 Me. 320), which reject the authority and soundness of the English decisions sustaining the sufficiency of vague and general counts in indictments for conspiracy. Among the cases cited by the supreme court of the United States was that of State v. Parker, 43 N. H. 83, in which the requisites of an indictment for conspiracy and the course of decisions in England are considered with care and ability. After commenting on the English decisions, Chief Justice Bell says: "We are constrained to regard these decisions which are not authorities here, as of very little weight, because the reasons assigned for the leading case, on which all the others depend (if reasons they can be called), are weak and unsound, and none better have been suggested in any of those that followed, because it appears by Lord Denman's opinion in Reg. v. Kenrick, 5 Adol. & E. (N. S.) 49, that eminent judges have regretted the decisions as dangerous to the accused, because the courts have found themselves compelled to supply the defects of such indictments by bills of particulars, which is conclusive that, in the opinion of such judges, the indictments did not state the crime or offence so 'fully and plainly, substantially and formally' (Bill of Rights, N. H. § 15), that a party ought not to be put upon his trial until its defects were supplied. We infer from the repeated instances in which the courts have been called to reaffirm these decisions, that the judgment of the bar revolts at them as unsound, and we draw the same inference from the fact that, out of the decisions we have found since 1819, no less than four are

in conflict with the cases we have here cited. These are: Rex v. Richardson, 1 Moody & R. 402, in 1834; Rex v. Fowle, 4 Car. & P. 592, in 1831; Rex v. Biers, 1 Adol. & E. 327, in 1834; and Reg. v. Peck, 9 Adol. & E. 686, in 1839. The same question has arisen in the courts of Massachusetts, Maine, New York, and Michigan, and has been decided with reference to the English decisions, as we think, more in accordance with the general principles of the law."

The views of the supreme court of Vermont in the case of State v. Keach, 40 Vt. 113, cited by the supreme court of the United States, and of the supreme court of Massachusetts (Com. v. Hunt, 4 Metc. (Mass.) 111; Com. v. Eastman, 1 Cush. 189; Com. v. Shedd, 7 Cush. 514), and of the supreme court of Pennsylvania (Hartmann v. Com., 5 Pa. St. 60), are to the same effect, and equally pointed and decisive. See, also, Archb. Cr. Pl. & Ev. (6th Am. Ed.) 620, and cases cited.

The principles laid down by the supreme court of the United States in the case of U. S. v. Cruikshank, supra, cover every question which arises as to the sufficiency of the second count of the indictment now under consideration. Let us turn to this count and see what it alleges against the defendants: (Here the court read this count, as is above set out.) This count is divisible into two parts: first, the conspiracy portion; second, the portion which charges what is termed the "overt act" —i. e., "the act done" by the defendants "to effect the object of the conspiracy." The conspiracy to defraud the United States is alleged to consist in "certifying that certain false and fraudulent accounts and vouchers for material furnished for use in the construction of the said custom-house and post-office, and for labor performed on said building, were true and correct." What can be more general and indefinite than this? It is not alleged that the conspiracy was to certify falsely all accounts and vouchers for material and labor for the building, but to certify "that certain false accounts and vouchers for material and labor were true and correct." This is all. But what accounts and what vouchers, is not alleged. How does this advise the defendant so as to enable him to make his defence; what accounts or what vouchers are to be impeached? How can the court know, if a trial is gone into under this indictment, whether the accounts and vouchers offered in evidence by the government are the same ones in respect to which the grand jury found the bill of indictment. Lambert v. People, 9 Cow. 578. If the defendants are convicted or acquitted on an indictment so general and uncertain, how can they plead the judgment in bar of another prosecution? How does it appear that the accounts and vouchers were such as that an in-

tent to defraud the United States can be predicated of them? No dates, sums, amounts, persons, or materials are mentioned, and it does not appear that this could not be done, for the allegation is that the conspiracy related to "certain false and fraudulent accounts." We agree with the supreme court of Pennsylvania, in the case cited, that "precision in the description of the offence is of the last importance to the innocent," and hence the importance of the decision of the United States supreme court in the Cruikshank Case, which settles the law for all the courts of the United States.

This indictment does not advise the defendants what they will have to meet, and they cannot tell from it which of the multitudinous vouchers and accounts they have certified will be relied on by the government to establish the charge.

This is an indictment for conspiracy to defraud the United States, and the American decisions are uniform to the point that the means by which the fraud is to be effected must be described in some part of the indictment with certainty. U. S. v. Ulrici [Case No. 16,594]; State v. Parker, supra; State v. Keach, supra; Com. v. Hunt, supra; State v. Roberts, supra. Nor is the uncertainty in the present indictment helped out by the averments with respect to the overt act. It is charged in this behalf · that the defendants presented to the disbursing agent of the United States certain written and printed papers, purporting to be true and correct pay-rolls of mechanics and laborers on the building for the month of November, 1874, which were vouchers for the payment of the sum of $21,-862.02. But it is not alleged that these pay-rolls were false or not true, and much less that the defendants knew them to be so. The averments in respect to the overt act do not show any criminal offence in connection with those pay-rolls, and, hence, we say that they cannot, in any view, aid the defects in the conspiracy portion of the count. Reg. v. Rex, 7 Adol. & E. (N. S.) 782.

We have gone into this matter thus fully, so that the counsel for the government should be advised of the views of the court to guide his further action.

I am authorized to state that TREAT, District Judge, fully concurs in these views.

Judgment accordingly.