STATE OF MAINE
*vs.*
EARLE W. ALBEE

Kennebec.    Opinion, May 9, 1957.

*Frank F. Harding,*
*Robert Marden,* for State.

*Richard S. Chapman,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, DUBORD, JJ. SULLIVAN, J., did not sit.

BELIVEAU, J. This case is here on five exceptions. Seven exceptions were taken during the trial but the respondent waives exceptions six and seven.

In the indictment the respondent is charged with obtaining the sum of $878.00 from one Leon E. Gordon under false pretenses. He was tried, convicted and sentenced.

On June 8, 1955, in Waldo County Municipal Court, Gordon was found guilty of operating motor vehicle while under the influence of intoxicating liquor. He appealed and this appeal was pending when, as he testified, he met the respondent in a cocktail bar at Augusta, the latter part of July, 1955. Gordon was drinking heavily and there is testimony that he was very much under the influence of intoxicating liquor when he approached the respondent and discussed his troubles with him.

Prior to this meeting the respondent and Gordon were complete strangers. Gordon had a prior record of other convictions for this same offense. He told the respondent he would willingly pay him $10,000 to have the case disposed of without a record.

According to testimony, evidently believed by the jury, the respondent volunteered to work to the end that the case

would be disposed of advantageously to Gordon. The respondent was not an attorney. He relied on his alleged political influence and prestige to improperly influence law enforcement officers in the performance of their sworn duty.

At the time of this interview Gordon knew the respondent had been a State Senator. According to Gordon the respondent claimed he had been successful in having such a case against himself disposed of and had been instrumental in doing this for others.

They met on several occasions between the first interview and the 28th of August, 1955, when Gordon paid the respondent $878.00, which is admitted by the respondent. According to Gordon's testimony he was told by the respondent he had to "grease a few palms" to the extent of $750.00. Gordon insisted that they interview his attorney in Rockland before he paid him this money. After the interview with the attorney in Rockland, Gordon paid the money to the respondent. There is some controversy as to what transpired in the attorney's office but whatever happened there, it satisfied Gordon that the arrangements had been made by the respondent with some officials to have the case disposed of and all that remained was to "grease a few palms."

There is some contradiction in the testimony on this point, but, there was ample evidence in the case to warrant a finding by the jury that this was the situation.

The respondent testified this was not the agreement and that, at the time of their first interview, he informed Gordon he would work for him and his compensation would be $35 a day, plus actual expenses, and that the money paid by Gordon the latter part of September, 1955, covered 22 days' work by the respondent and some expenses.

The first four exceptions relate to testimony of admissions by the respondent, admitted over objection by the

respondent, that he had, on several occasions, through his political influence, been able to have such cases disposed of —among others, he cited his own case.

This evidence was objected to as immaterial and prejudicial. The evidence was not offered nor admitted as proof of guilt in other matters but to show the course of conduct and state of mind of the respondent up to the time he was paid.

Any talk made by the respondent with Gordon, or his wife, having to do with this situation, was admissible and if damaging, the respondent has no one to blame but himself. This was sales talk, of a kind, and was evidently made to convince Gordon and his wife that the respondent had that kind of political influence which could bring about the desired results.

Statements by the respondent are admissible whether incriminating or beneficial.

Some courts hold that such declarations are part of *res gestae*.

In *Commonwealth* v. *Trefethen*, 157 Mass. at page 188:

> "On principle, therefore, we think it clear that, when evidence of the declarations of a person is introduced solely for the purpose of showing what the state of mind or intention of that person was at the time the declarations were made, the declarations are to be regarded as acts from which the state of mind or intention may be inferred in the same manner as from the appearance of the person or his behavior, or his actions generally. In the present case the declaration, evidence of which was offered, contained nothing in the nature of narrative, and was significant only as showing the state of mind or intention of the deceased."

20 American Jurisprudence, Section 585 at page 491.

"Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible. State v. Chin Ting, supra; Commonwealth v. Retkovitz, 222 Mass. 245, 110 N.E. 293; Underhill's Criminal Evidence (3d Ed.) § 103, and cases cited."

*State* v. *Miller*, 161 A, page 224.

"It is well established, that where evidence of an act done by a party, is admissible, his declarations, made at the time, having a tendency to elucidate, explain, or give character to the act, are also admissible. They are admissible because they are a part of the transaction, as well in favor of, as against the party making them, and may be given in evidence by the defendant as well as the State."

*State* v. *Daley*, 53 Vt., 442.

The fifth exception was to the refusal of the presiding justice to grant a motion for a directed verdict.

The position of the respondent is well stated in his brief, when he says, "- - - - that regardless how reprehensible the statements of the Respondent might have been, his statements pertained to acts which the Respondent was to do in the future and were not statements of a present existing fact, - - -"

The rule is that a motion for a directed verdict must be granted, when, in the words of Justice Walton, *State* v. *Cady*, 82 Me., page 428, "- - - - - the evidence in support of a criminal prosecution is so defective or so weak that a verdict of guilty based upon it can not be sustained, - - - - -" This rule has been reaffirmed repeatedly by our court and is the law in Maine.

If, as the respondent argues, the evidence is such that the statements made by the respondent, "- - - pertained to acts which the Respondent was to do in the future and were not

statements of present existing fact, - - - - -" no crime has been committed.

To determine that there is sufficient evidence to warrant a verdict, the case must be considered as a whole and not by reference to isolated bits or pieces of evidence. It is evident that the respondent's sole purpose, from the beginning, was an attempt by him, for a financial consideration, to circumvent the law by making improper and illegal arrangements to have Gordon's case disposed of without any record of guilt.

While the respondent was a stranger to Gordon prior to the July meeting, when $10,000 was mentioned he became a friend of Gordon's and tremendously interested in his welfare.

Gordon testified the respondent told him the cost would not be more than two or three thousand dollars to "squash it." If the money had been paid to the respondent on the occasion of their first meeting there could be no charge of obtaining money under false pretenses.

The evidence warrants the conclusion that all that remained to be done, late in August, was the payment by Gordon to certain officials. If that is supported by the evidence, and we think it is, the statements by the respondent referred to a present existing fact. It is significant, in this respect, that Gordon would not pay the respondent the money until they had visited the office of Gordon's attorney in Rockland.

There are two versions of what happened there but apparently the jury believed the testimony offered by the State as to that incident. It certainly convinced Gordon the respondent had done his work well and all that remained for him to do was the payment of money. The jury accepted Gordon's version.

The testimony was highly conflicting. It was essentially a question of fact for the jury and it rejected the respondent's testimony as highly incredible.

No fault is found with the charge of the presiding justice. It was clear, thorough and a detailed discussion of the law involved.

The last chapter was written when Gordon was found guilty of the driving offense and sentenced to pay a fine and serve a term in jail.

*Exceptions overruled.*
*Judgment for the State.*