**STATE of Maine**

v.

**Arthur CHICK, Eugene V. Roy, Roderick J. Perry and Armand D. Doiron.**

Supreme Judicial Court of Maine.

March 12, 1970.

James S. Erwin, Atty. Gen., and Peter T. Dawson, Asst. Atty. Gen., Augusta, for plaintiff.

Joseph F. Holman, Farmington, for defendant Chick.

Gerard S. Williams, Farmington, Edward H. Cloutier, Livermore Falls, for defendant Roy.

Thomas E. Day, Jr., Lewiston, for defendants Perry and Doiron.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Justice.

Jointly indicted by the Grand Jury at the February term, 1969, of the Superior Court in Franklin County for conspiracy to commit the crime of cheating by false pretenses, the four appellees respectively moved for dismissal under Rule 12(b), M.R.Crim. P., claiming that the indictment was fatally deficient as a matter of law. The Justice below granted the motions to dismiss and the State appeals under 15 M.R.S.A. § 2115-A. We agree that the dismissal was proper and that the State's appeal must fail.

The sole issue before us is whether the indictment charging the accused with the offense of conspiracy under 17 M.R.S.A. § 951, was such a plain, concise and definite written statement of the essential facts constituting the conspiracy charged as to meet the requirements of Rule 7(c), M.R. Crim.P., and simultaneously satisfy the mandates of our State and Federal Constitutions. The reference indictment in pertinent part reads as follows:

"THE GRAND JURY CHARGES:

That Arthur Chick of Salem, County of Rockingham, and State of New Hampshire, Roderick J. Perry of Jay, County of Franklin, State of Maine, Eugene V. Roy of Jay, County of Franklin, State of Maine and Armand D. Doiron, of Jay, County of Franklin, and State of Maine, on or about October 13, 1964, and continuously thereafter, up to and including March 1, 1967 at Jay, County of Franklin and State of Maine, did combine, conspire and agree together, feloniously with malicious intent, wrongfully and wickedly, to commit a crime punishable by imprisonment in the state Prison to wit: did then and there illegally conspire and agree together with such intent, wrongfully and wickedly to cheat the inhabitants of the Town of Jay, by obtaining therefrom certain money, goods or property by false pretenses and with intent to defraud in violation of 17 M.R.S.A., § 1601."

The applicable statutes in turn read as follows:

*17 M.R.S.A. § 951.*

"If 2 or more persons conspire and agree together, with the fraudulent or malicious intent wrongfully and wickedly
* * * * * *
to commit a crime punishable by imprisonment in the State Prison, they are guilty of a conspiracy. Every such offender and every person convicted of conspiracy at common law shall be punished * * *"

*17 M.R.S.A. § 1601.*

"Whoever, designedly and by any false pretense or privy or false token and with intent to defraud, obtains from another any money, goods or other property, the making of a loan or credit, the extension of credit, the discount of an account receivable or what is represented to be an account receivable, or the making, acceptance, discount, sale or indorsement of a bill of exchange, bank check or promissory note, or his signature to any written instrument, the false making of which is forgery, or whoever knowingly, and with intent to defraud, sells, conveys, mortgages or pledges to another personal property on which there is an existing mortgage or to which he has no title, without notice to the purchaser of such mortgage or of such want of title, is guilty of cheating by false pretenses and shall be punished by a fine of not more than $500 or by imprisonment for not more than 7 years. A promise, if unconditional and made without present intention of performance, will constitute a false pretense within this section."

■ Comparing the foregoing statutory provisions with the language of the indictment, we readily observe that the accusation charged against the appellees was couched only in the general terms of the statutes, both with respect to the conspiracy and its unlawful purpose and also the felony of cheating by false pretenses, the intended ulterior crime which was the alleged object of the conspiracy. The indictment contains no specification of any of the false pretenses which the conspirators had settled upon, in their conspiratorial undertaking, to effect their common purpose of cheating and defrauding the inhabitants of the Town of Jay in their alleged scheme to obtain money, goods and property "therefrom". It is true that ordinarily a description of the offense in the words of the statute or equivalent language within the meaning of the statutory wording will suffice. But, if the statute does not suffi-

ciently set out the facts that make the crime, a more definite statement of facts is necessary. State v. Michaud, 1955, 150 Me. 479, 114 A.2d 352.

█ In all criminal prosecutions the accused shall have a right to demand the nature and cause of the accusation. Constitution of Maine, Article 1, § 6; Amendment VI to the Constitution of the United States. These constitutional mandates require that every fact or circumstance necessary to make out a prima facie case of the commission of the crime charged be stated or described in the indictment. Berger v. State, 1951, 147 Me. 111, 83 A.2d 571. These requirements are satisfied when the indictment contains such plain, concise and definite allegations of the essential facts constituting the intended offense as shall adequately apprise an accused of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise. State v. Charette, 1963, 159 Me. 124, 188 A.2d 898; State v. Bull, 1969, Me., 249 A.2d 881.

█ These stated constitutional privileges and accepted judicial canons of proper criminal pleading apply with equal force to an accusation charging the crime of conspiracy, and an indictment for that offense must state, with as much certainty as the nature of the case will admit, the facts which constitute the crime intended to be charged, and be so far precise that the accused may know what charge he has to answer, and may be able to plead his acquittal or conviction upon it to a future indictment on the same facts. State v. Keach, 1867, 40 Vt. 113.

The State argues that the instant indictment fully complies with constitutional and judicial requirements in that it describes in the general words of the statute a conspiracy to commit a crime punishable by imprisonment in the State Prison, with the added feature that the intended felony is identified to be the crime of cheating by false pretenses with intent to defraud the inhabitants of the Town of Jay. It is claimed that the means to be used in the execution of the conspiracy need not be stated therein and therefore failure to specify any of the false pretenses underlying the conspiratorial scheme is immaterial. The appellees on the other hand assert that without disclosure of false pretenses criminal in law, the indictment is fatally insufficient.

█ Conspiracy has been defined by our Court to be a combination of two or more persons, by concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. Berger v. State, supra; State v. Mayberry, 1859, 48 Me. 218. Conspiracy to commit a crime, whether it be of the grade of a felony or only of a misdemeanor, and whether the crime be an offense at common law or by statute, is a conspiracy at common law, which is an indictable offense in this State, recognized and made punishable by the conspiracy statute. State v. Vermette, Lumbarti, 1931, 130 Me. 387, 156 A. 807. The gist of the offense consists in the act of conspiring together to accomplish some unlawful purpose, or to accomplish some object not in itself criminal by unlawful means. The conspiracy itself is the complete criminal act; the unlawful agreement is the thing which constitutes the crime. It is not necessary for the commission of the crime that any overt acts be done in execution of the unlawful agreement or in pursuance of the conspiracy. State v. Keach, supra; State v. Pooler, 1945, 141 Me. 274, 282, 43 A.2d 353.

█ To charge the appellees in the language of the statute that they "did combine, conspire and agree together, feloniously with malicious intent, wrongfully and wickedly, to commit a crime punishable by imprisonment in the State Prison," was in

and of itself insufficient to apprise the accused of the specific purpose or object of the conspiracy and failed, because of the use of generic terms, to set forth a fact necessary to attach criminality to the alleged unlawful agreement or conspiracy. Similarly, an indictment charging an attempt to break and enter for the purpose of committing a felony, without specifying the particular felony intended, was held fatally defective in State v. Doran, 1904, 99 Me. 329, 59 A. 440, 105 Am.St.Rep. 278.

 This Court has stated that, in conspiracy cases, if the deed to be accomplished or purpose to be promoted by the confederacy is in itself criminal or unlawful in that it is descriptive of a well defined and well recognized criminal offense, the nature of which is perfectly understood by the name by which it is designated such as murder, robbery or rape, no further description of the intended crime need be made and the particular means to be used in the commission of the intended criminal offense need not be set out in the indictment. State v. Bartlett, 1849, 30 Me. 132; State v. Ripley, 1850, 31 Me. 386. When the means, by which the object of the conspiracy is to be accomplished are not set forth in the indictment as in the instant case, the purpose itself should appear to be unequivocally illegal and forbidden by law, or the indictment cannot be sustained. The charge must, in the totality of its averments, point up the criminality of the purpose underlying the conspiracy, and when the intended object of the unlawful combine as described does not appear to be in and of itself criminal or unlawful, then the particular unlawful means upon which the plotted activity rests must be distinctly set out therein. Berger v. State, supra; State v. Hewett, 1850, 31 Me. 396.

 The words "cheat and defraud" have no signification exclusively criminal. They are ambiguous as they are as well applicable to injuries resulting from civil contracts as to those inflicted wholly by breach of the criminal law. It is only when the cheating and defrauding is effected by such false pretenses as are made criminal by statute or the common law that criminality attaches to the purpose of the conspiracy.

In State v. Keach, supra, the Court said:

"The indictment must, therefore, contain allegations setting forth the means proposed to be used to accomplish the purpose agreed upon; not because it is necessary to set forth the overt acts in support of the charge of a conspiracy, but because it must appear from the indictment that the object of the conspiracy was criminal."

Our own Court, in State v. Roberts, 1851, 34 Me. 320, stated:

"It is not necessarily in law, a crime, which subjects the perpetrator to punishment, to defraud one of his money, goods, chattels or estate, nor to cheat and defraud one of the same; nor wrongfully and wickedly obtain his money and other property, designedly and with intent to defraud."

In State v. Mayberry, supra, we said that the mere allegation that the defendants conspired to cheat and defraud a named individual would not be sufficient. In Roberts, a similar indictment describing the conspiracy purpose in language of the instant accusation with added reference to the means to be employed only in generic terms of "false pretenses" without more specificity was held too general and not in accordance with the established rules of criminal pleading.

 While the ulterior felony intended as the object of the conspiracy need not be set out as fully and specifically as would be required in an indictment for the actual commission of such felony (see, by analogy, State v. Doran, supra; Commonwealth v. Doherty, 1852, Mass., 10 Cush. 52; Josslyn v. Commonwealth, 1843, Mass., 6 Metc. 236), in the case of conspiracy to cheat by false pretenses, however, the in-

tended offense must be described in language more specific than the mere name of the offense of cheating by false pretenses. Such an averment constitutes a mere conclusion of the pleader characterizing the quality of the pretenses and without specific description of the means proposed to be used by the conspirators to achieve their fraudulent purpose would be too vague and general and would not sufficiently inform the accused of the nature and cause of the accusation within constitutional requirements. State v. Roberts, supra; State v. Hewett, supra; State v. Keach, supra; Alderman v. People, 1857, 4 Mich. 414; State v. Parker, 1861, 43 N.H. 83; Commonwealth v. Wallace, 1860, Mass., 16 Gray 221.

We are aware that certain courts have followed a contrary rule based upon the English decision of the King v. Gill, 2 B. & Ald, 204, referred to by our Court in State v. Bartlett, 1849, 30 Me. 132, 135. See, Blum v. State, 94 Md. 375, 51 A. 26, 56 L.R.A. 322; State v. Malone, 1951, 13 N.J.Super. 510, 80 A.2d 592, affirmed in appellate division at 16 N.J.Super. 383, 84 A.2d 745. But the English practice has been criticized in The Queen v. Kenrick, 5 Ad. & El. N.R. 61 as regrettable "that a charge so little calculated to inform a defendant of the facts intended to be proved upon him should be considered by the law as well laid." Justice Tenney wrote both opinions for this Court, *Bartlett* in 1849 and *Roberts* in 1851. It is obvious to us that the earlier *Bartlett* dictum to the effect that in conspiracies to cheat and defraud "it was quite sufficient to state only that fact and its object, and not set out the specified pretenses," which represented the English doctrine, was being fully discarded by this Court in *Roberts* in favor of a criminal pleading practice more in harmony with American justice and in accommodation to our constitutional concepts.

 Our statute, 17 M.R.S.A. § 1601, has broadened the scope of indictable or criminally unlawful cheats and frauds from what they were at common law, but it does not encompass all cheats. Some false pretenses may fall short of importing criminal conduct either at common law or under the statute. A false pretense as to future acts or events will not support a conviction for obtaining property under false pretenses. And if a promise be the basis of the false pretense, the State must allege and prove that the promise was unconditional and made without present intention to perform in order to give it the criminal aspect provided by the statute. See, State v. Albee, 1957, 152 Me. 425, 132 A.2d 559; State v. Austin, 1963, 159 Me. 71, 188 A.2d 275. Mere expressions of opinion will not suffice to support a criminal prosecution for cheating by false pretenses. State v. Binette, 1963, 159 Me. 231, 190 A.2d 744.

In *Berger,* supra, our Court said "[t]he words in the indictment are not sufficient to explain the intended act or to negative the fact that the respondents may have lawfully agreed to engage in legal pari-mutuel betting. The manner in which the illegal purpose (if it was illegal) was to be accomplished is not set forth, the purpose itself should appear to have been plainly illegal, and forbidden by law, or the indictment cannot be sustained." From all that appears by the instant indictment, now under consideration, the object or purpose of the conspiracy is not alleged to be illegal. Such pleading does not charge a criminal conspiracy.

The entry will be

Appeal denied.