STATE OF MAINE
*vs.*
IRMA MICHAUD
(Two Cases)

Androscoggin.    Opinion, April 22, 1955.

*Edward J. Beauchamp,*
*Irving Isaacson,* for State.

*Israel Alpren,*
*Berman & Berman,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, TAPLEY, JJ. WEBBER, J., concurring specially. BELIVEAU, J., did not sit.

FELLOWS, C. J.    This record contains two cases of *State* v. *Irma Michaud,* and consists of two indictments, to each of which indictments the respondent filed a special demurrer. In each case the justice presiding at the January term of the Superior Court for Androscoggin County overruled the demurrer, and in each case the respondent comes before the Law Court on exceptions to the court's ruling. The two cases come forward in the one printed record.

### FIRST CASE

This indictment (Law Court Docket No. 53, Superior Court Docket No. 5081) called on the Superior Court docket "Misprision" of felony, alleges in the charging part as follows:

"That Irma Michaud, of Lewiston in the County of Androscoggin on July 11, 1953 at Lewiston, having knowledge of the actual commission of a felony

cognizable by the courts of this state in that the said Irma Michaud knowing that one Simonne Lauze of said Lewiston had on July 4, 1953 at said Lewiston feloniously committed the crime of adultery with one Gerard Houle of Brunswick by then and there having carnal knowledge of the body of the said Gerard Houle (the said Simonne Lauze being then and there a married woman and having a lawful husband alive other than the said Gerard Houle) and the said Simonne Lauze and said Gerard Houle not then and there being lawfully married to each other, all of which being then and there known to the said Irma Michaud, the said Irma Michaud did feloniously, fraudulently and wilfully conceal and did not as soon as possible make known the commission of the said crime of adultery as aforesaid to some one of the judges having jurisdiction of such offenses or some officer charged with the enforcement of the criminal laws of the state, with intent thereby to hinder the due course of justice and to cause the aforesaid Simonne Lauze to escape unpunished."

To this indictment the respondent filed a special demurrer, claiming, among many other things, that the indictment failed to disclose what the knowledge of the respondent was or how the knowledge was obtained, and that there was no allegation showing how or in what manner there was a concealment. In brief, that the indictment does not allege sufficient facts to constitute a crime under the laws of Maine.

The indictment was apparently brought under Revised Statutes (1944), Chapter 122, Section 12, now Revised Statutes (1954), Chapter 135, Section 12, which reads as follows:

"Whoever, having knowledge of the actual commission of a felony cognizable by courts of this state, conceals or does not as soon as possible disclose and make known the same to some one of the judges or some officer charged with enforcement of criminal

> laws of the state shall be punished by a fine of not more than $500 or by imprisonment for not more than 3 years, or by both such fine and imprisonment."

A defendant has a constitutional right to know the nature and the cause of the accusation against him. The necessary facts must be stated with certainty. The description of the criminal offense charged in the indictment must be full and complete. An indictment must charge a crime either under the statute or at common law. It should charge a statutory offense in the words of the statute or equivalent language within the meaning of the words of the statute. If the statute does not sufficiently set out the facts that make the crime, a more definite statement of facts is necessary The want of a direct allegation of anything material in the description of the substance, nature, or manner of the offense cannot be supplied by intendment or implication. *State* v. *Doran*, 99 Me. 329; *State* v. *Strout*, 132 Me. 136; *State* v. *Lashus*, 79 Me. 541; *State* v. *Rowell*, 147 Me. 131; *State* v. *Paul*, 69 Me. 215; *State* v. *Rudman*, 126 Me. 177; *State* v. *Mahoney*, 115 Me. 256; *State* v. *Dumais*, 137 Me. 95; *State* v. *Beattie*, 129 Me. 229; *State* v. *Novarro*, 131 Me. 345; *Smith*, *Petr.* v. *State*, 145 Me. 313; *State* v. *Papalos*, 150 Me. 46; *State* v. *Maine State Fair Assn.*, 148 Me. 486.

The statute requires "knowledge of the actual commission of a felony." It must be actual and personal knowledge. It must not be knowledge from hearsay, or from possibilities or probabilities. It must be first hand knowledge by the respondent of all facts necessary to know that the alleged felony has been committed. The indictment in this case alleges knowledge of the crime of adultery on July 11, 1953 that occurred on July 4, 1953, but there is no allegation of the facts to indicate how the respondent knew. Allegations of conclusion are not enough. It is "vague and indefinite." *State* v. *Doran*, 99 Me. 329.

The State argues that "knowledge" is a matter of proof and that the allegation of facts constitute a felony and the further allegation "all of which being then and there known" is sufficient, for whatever she knew she "did \*\*\* conceal and did not \*\*\* make known." This presents a question that has, so far as we can ascertain, never before been presented in this State. The indictment does not indicate what the knowledge was or how obtained. The indictment does not state what the concealment was and does not state how or in what manner the respondent concealed the commission of the felony. How did she have, or obtain actual personal knowledge on July 11, 1953 of a felony committed on July 4, 1953 and how did she conceal it? For these reasons we think the indictment is faulty, and that the demurrer should have been sustained.

The crime early known as "misprision of a felony," has been but little discussed in text books, and few cases have considered statutes similar to our own. It is clearly indicated, however, that a mere omission to disclose knowledge of the commission of a felony, without positive concealment, is not enough.

The ancient Federal Statute of 1790, from which our statute was evidently taken, was "conceals *and* does not as soon as possible disclose." The Maine statute uses the word conceals *or* "does not \*\*\* disclose." The crime is to conceal and not disclose, because disclosure is not concealment. The Maine statute should be interpreted, as the State has attempted to plead it, that is, in the conjunctive. "And" and "or" are convertible. *W. S. Libby Co.* v. *Johnson,* 148 Me. 410, 94 Atl. (2nd) 907, 910. The terms are not contradictory. *State* v. *Cushing,* 137 Me. 112; *State* v. *Willis,* 78 Me. 70.

In *Commonwealth* v. *Lopes,* 318 Mass. 453, the opinion states "except when based upon statute, American cases

recognizing the offense of 'Misprision of Felony' are hard to find. . . . A federal statute, first enacted in 1790, provides that 'whoever having knowledge of the actual commission of the crime of murder or other felony, cognizable by the Courts of the United States, conceals and does not as soon as may be, disclose and make known the same to some one of the judges or other persons in civil or military authority, under the United States,' shall be punished. Cr. Code, Section 146, 18 U. S. C. A., Section 251. Under this statute mere omission to disclose without positive concealment is not enough." *Commonwealth* v. *Lopes*, 318 Mass. 453, 61 N. E. (2nd) 849; *Bratton* v. *U. S.* (10 Cir.), 73 Fed. (2nd) 795. See also *People* v. *Lefkovitz* (Mich.), 293, N. W. 642.

The court holds in the *Bratton* case *(supra)* that serious constitutional questions may arise under a statute which could impose penalties for mere knowledge and silence. Chief Justice Marshall once said that a law punishing the mere failure to proclaim every offense that comes to one's knowledge "is too harsh for man." *Marbury* v. *Brooks,* 7 Wheat., 556, 575, 576, 5 L. Ed., 522."

We hold that there must be allegations of complete actual knowledge of all necessary facts, and of positive concealment. The act of concealment must be alleged. Otherwise, a person could be tried and erroneously convicted on slight evidence that was only to the effect that he was in the vicinity of where a felony was "actually" committed, and from that improperly argue that he must have "known," and that he concealed because he knew and did "not disclose." He might not have seen. He might not have known or understood all the facts. The exceptions to the overruling of the demurrer in the first case must be sustained.

## SECOND CASE

This indictment (Law Court Docket No. 54—Superior Court Docket No. 5082) is for attempting to "procure," and

the allegations in the first count of the indictment are that the respondent Irma Michaud "did feloniously and willfully attempt to induce, persuade, encourage, inveigle, and entice one Blanche Gagnon of said Lewiston, a female person, to become a prostitute by offering to procure for and furnish to the said Blanche Gagnon men who would pay the said Blanche Gagnon for her engaging in sexual intercourse with them."

The second count alleges that the respondent "did solicit and attempt to procure one Blanche Gagnon of Lewiston, a female person for the purpose of prostitution by offering to procure for and furnish to the said Blanche Gagnon men who would pay the said Blanche Gagnon for her engaging in sexual intercourse with them."

A special demurrer was filed to the indictment "in both and each counts" on the ground of duplicity, that it was indefinite, uncertain, and that it does not inform the respondent of what the respondent should know in order to defend. The right to plead anew was reserved by the respondent and granted by the court. The presiding justice overruled the demurrer. The respondent filed exceptions.

There are apparently three statutory provisions that are, or might be, involved in one or both counts. These statutory provisions are as follows: (1) Revised Statutes (1944), Chapter 121, Section 12, Subsection IV, now Revised Statutes (1954), Chapter 134, Section 12, which makes it illegal "to procure or solicit or offer to procure or solicit for the purpose of prostitution, lewdness or assignation." (2) Revised Statutes (1944), Chapter 121, Section 16, now Revised Statutes (1954), Chapter 134, Section 16 reads "Whoever . . . . . induces, persuades, encourages, inveigles or entices a female person to become a prostitute," shall be guilty of a crime. (3) Revised Statutes (1944), Chapter 132, Section 4, now Revised Statutes (1954), Chapter 145, Section 4

defines an attempt as "Whoever attempts to commit an offense and does anything toward it, but fails or is interrupted or is prevented in its execution," . . . . . shall be guilty of an offense.

The attempt here is alleged in the first count "to induce, persuade, encourage, inveigle and entice" one Blanche Gagnon to become a prostitute," by offering to procure men who would pay the said Blanche Gagnon," etc. The count does not state to whom the "offer" was made. And the second count states, "did solicit and attempt to procure one Blanche Gagnon . . . for the purpose of prostitution by offering to procure for and furnish to the said Blanche Gagnon men who would pay the said Blanche Gagnon," etc. This count also fails to state to whom the "offer" was made.

Recognizing the rule that in an indictment for an attempt, the overt acts must be alleged, *State* v. *Doran,* 99 Me. 329, the State pleaded as overt acts offering to procure for and furnish to the said Blanche Gagnon men, etc. The State sets forth an attempt to commit the crime in language taken from Revised Statutes 1954, Chapter 134, Section 16, and for the overt acts sets forth the language substantially used in Revised Statutes 1954, Chapter 134, Section 12. The indictment, however, fails to state to whom the "offering" was made.

Is this an allegation of an attempt to violate Chapter 134, Section 12, or an attempt to violate Section 16? Or, is it an allegation in one count of an attempt to violate both sections? The count does not clearly and positively state what the crime was that was attempted.

It may be that the State alleges an attempt to violate Section 16 of Chapter 134, and for overt acts alleges the crime proscribed in Section 12. Under such circumstances, what crime was attempted and what crime was committed?

The indictment, and each of the two counts in the indictment, does not positively and clearly state to whom any offer was made. Was it an offer to "men"? Was it an offer by the respondent to some relative of the respondent or relative of Blanche Gagnon? Was it an offer to Blanche Gagnon? If it was an offer to Blanche Gagnon, it does not so state. Nothing must be left to intendment, and nothing must be left to implication. If it was the intention of the State to allege an attempt to procure, who is the respondent procuring? Is it Blanche Gagnon, or men for Blanche Gagnon? See *State* v. *Doran, et als.*, 99 Me. 329, and long list of cases previously cited in the first portion of this opinion.

Every man accused of crime is presumed to be innocent, and for that reason indictments must be drawn so that the innocent may know what charge he is to meet. A "blanket" that might cover several offenses is not permissible in a single count. All lawyers who hold, or have held, the office of the prosecuting attorney know that at a busy session of the criminal court it often happens that little time and opportunity is had to draw an indictment under a new, or a little used, statute. The books contain no tested form. This cannot, however, excuse the necessity for precision. The language used in an indictment is not important, but certainty is vital in order to enable the court to pronounce a valid judgment on a conviction. "The language employed to express the gravamen of the crime ought not to be supplied by intendment." *State* v. *Carkin*, 90 Me. 142, 145.

Both of the counts in this indictment are most indefinite and uncertain. There is no full, formal, and precise accusation. Was this an attempt or was there a completed offense? Does it allege an attempt to solicit or does it allege separate crimes? There is no certainty.

The demurrer in this second case should have been sustained.

In each of the two above named cases, therefore, the entry must be

*Exceptions sustained.*

*Indictment adjudged bad.*

### SPECIAL CONCURRING OPINION

WEBBER, J.  I agree with the results arrived at by the court, but with respect to the indictment charging misprision of felony, I cannot subscribe to the reasons advanced in the opinion for holding the indictment insufficient.

The opinion states that the State should have set forth what the knowledge of the respondent was and how it was obtained.  In my view, such a requirement would compel the State to plead mere details of proof. The allegations of the indictment contain the following phrases with reference to knowledge: (1) "Having knowledge of the actual commission of a felony"; (2) "knowing that" followed by a sufficient allegation of adultery; (3) "all of which being then and there known to the said (respondent)." The statutory requirement is "having knowledge of the *actual* commission of a felony." (Emphasis supplied). The word "actual" cannot be ignored.  Its obvious intendment is to preclude hearsay, gossip, rumor and the like.  Knowledge that one is suspected of crime or is rumored to have been involved in crime is not knowledge that one has actually committed crime.  I would assume that the State would be compelled to prove knowledge through personal observation of the criminal act, or knowledge of such circumstantial evidence as would clearly show guilt and effectively eliminate a reasonable hypothesis of innocence, or knowledge by admission establishing guilt made by the guilty party to the respondent. This, as it seems to me, is the sort of knowledge which is charged in the indictment by the words "actual commission" and is the sort of knowledge the State must

prove in support of the allegation. In *State* v. *Wilson*, 80 Vt. 249, 67 A. 533, the allegation as to knowledge was that the respondent "well knew," which was deemed sufficient. In *Bratton* v. *U. S.*, 73 Fed. (2nd) 795, no issue as to the method of alleging knowledge was raised, the allegations being of personal observation of the commission of the crime. In *Commonwealth* v. *Lopes*, 318 Mass. 453, 61 N. E. (2nd) 489, the allegations as to knowledge were "knowingly" and "well knowing that" without detail as to the method or sources of knowledge, and no issue was raised as to any insufficiency of allegation as to knowledge. In *State* v. *Biddle*, 2 W. W. Harr. (Del.) 401, 124 Atl. 804, the language of the indictment with reference to knowledge was "well knowing" and no more. Although the *Biddle* case is limited to the charge of a justice at *nisi prius*, the form of the indictment is at least an interesting precedent. In *State* v. *Neddo*, 92 Me. 71, an indictment directed against an alleged accessory after the fact, where the State was required to aver that the alleged accessory knew the principal felon to be such, the allegation was that the respondent "knew Coro 'to be such principal felon and to have committed the crime aforesaid.' " It would appear that no effort was made to set forth the respondent's *means of knowledge*. The court, although it examined every aspect of the indictment with meticulous care, made no issue as to the sufficiency of the allegation of knowledge. With respect to means of action, the court said at page 77, " 'It is in no case necessary to set forth the means by which the accessory before the fact incited the principal to commit the felony, or the accessory after received, concealed or comforted him; for it is perfectly immaterial in what way the purpose of one was effected, or the harboring of the other secured; *and as the means are frequently of a complicated nature, it would lead to great inconvenience and perplexity if they were always to be described upon the record.*' II Bishop's Crim. Proc. Sec. 8." (Emphasis supplied.) It would seem that the quoted

language might be applied with equal force to allegations as to means of knowledge. I conclude therefore that the allegations before us as to knowledge were adequate and that the means of knowledge become matters of proof.

As to concealment and failure to disclose, the State has treated our statute as requiring pleading in the conjunctive and has so pleaded in the words, "did feloniously, fraudulently and wilfully conceal and did not as soon as possible make known the commission of the said crime." The State has added the words, "with intent thereby to hinder the due course of justice and to cause the aforesaid Simone Lauze to escape unpunished." It is true that in the *Bratton* case, *supra,* it was said that positive acts of concealment must be set out such as "suppression of the evidence, harboring of the criminal, intimidation of witnesses, or other positive act designed to conceal from the authorities the fact that a crime has been committed." It is necessary to distinguish between misprision of felony and the offense of accessory after the fact. If positive acts of concealment are of such a nature as to make the respondent guilty as an accessory after the fact, we have something more than misprision of felony which is essentially a criminal neglect. Bishop's Crim. Law 9th Ed., Vol. 1, page 513, sec. 717, gives this definition: "Misprision, whether of a felony or of treason, is a criminal neglect, either to prevent it from being committed, or to bring to justice the offender after its commission, 'but without such previous concert with or *subsequent assistance to him,* as will make the concealment an accessory before or *after the fact.'*" (Emphasis supplied.)

Our Legislature has seen fit to distinguish and define both the offense of misprision of felony and the offense of being accessory after the fact. The accessory Statute (now R. S., 1954, Chap. 145, Sec. 3) provides: "Every person, not standing in the relation of husband or wife, parent or child to the principal offender, who harbors, conceals, main-

tains or assists any principal felon, or accessory before the fact, knowing him to be such, with intent that he may escape detection, arrest, trial or punishment is an accessory after the fact and shall be punished" etc. The illustrations of positive acts of concealment quoted above from the *Bratton* case would all seem to fall within the scope of harboring or assisting as used by our accessory statute. In short, the practical result of requiring the pleading of positive acts would be to destroy any distinction between misprision of felony and the crime of being accessory after the fact. That this was the practical result of the interpretation of the Federal statute adopted in the *Bratton* case has been noted by some authorities. In *Commonwealth* v. *Lopes, supra*, at page 851 of 61 N. E. (2nd) it is said: "In *State* v. *Graham*, 190 La. 669, 670, 182 So. 711, 714, it was said of that statement (that misprision of felony is obsolete) that 'the reason for that is that, in the modern acceptation of the term, misprision of felony is almost if not identically the same offense as that of an accessory after the fact' as indeed it is under the Federal statute already quoted." Whatever may be the law in other jurisdictions, I cannot agree that the offense of misprision of felony has not been maintained separate and distinct from the offense of an accessory after the fact by our statutes, or that to charge one with the former crime, the State must allege substantially what would be required to charge the latter offense. The key to the distinction lies in the proper interpretation of the word "conceals" in our misprision statute which implies that purposeful, unlawful intent which has been deemed essential to the common law crime of misprision. In both *State* v. *Wilson, supra,* and *Commonwealth* v. *Lopes, supra,* the courts, although primarily concerned with determining whether or not the common law crime of misprision of felony exists in their respective jurisdictions, place their emphasis on whether or not the concealment rests on evil motives and intent. Both of these cases go so far as to require affirma-

tive pleading that the concealment was with evil intent, a requirement which the State has met in the indictment before us. Bishop, *supra,* at page 515, Sec. 721, says: "It would seem in principle that the motive prompting the neglect of a misprision should be in some form evil as respects the administration of justice; for example, to prevent the offender's punishment, or to withhold due aid from the government." If, therefore, these authorities fairly interpret the requisites of the common law offense of misprision of felony, is it not reasonable to conclude that our Legislature in enacting a statute dealing with misprision of felony intended a similar meaning in its statutory use of the word "conceals"? If this be so, it follows that our Legislature has made it unlawful for one with actual knowledge of a felony to remain silent and inactive if in so doing he has a definite and positive intent to hinder and prevent justice and assist the culprit to escape punishment. If in fact the concealment is motivated by some natural reluctance which may stem from timidity or aversion to publicity, or (as in the *Lopes* case) a desire to avoid self-incrimination of another and separate crime, then the nature of the concealment lacks that essential essence of unlawfulness intended by the statute. Protection afforded by such an interpretation to citizens whose failure to act does not rest on an intention to aid the culprit or defeat justice eliminates that "intolerable oppressiveness" referred to in the *Bratton* case. It may be that the statutory offense of misprision is out of tune with our modern concepts of the duty of citizens, or so difficult of proof as to have little efficacy as a practical social discipline, but these considerations, if valid, are matters for legislative rather than judicial action. I question the propriety of destroying the statutory offense of misprision of felony by merging it into the offense of being accessory after the fact by what might be thought by some to be judicial legislation. I conclude therefore that the *unlawful nature* of the concealment should be both pleaded

and proven by the State rather than so-called positive acts of concealment which would tend in most cases to charge the respondent with being an accessory after the fact. The State here has pleaded, (1) the knowledge of the actual commission of the alleged felony; (2) the felony itself alleged to have been known and concealed; (3) the concealment and failure to disclose; and (4) the unlawful nature of the concealment because of the unlawful intent which motivated it. If the indictment was not deficient in other respects, these averments should be sufficient.

There is another reason, however, which renders the indictment vulnerable to demurrer. The indictment alleges the time of the respondent's knowledge as July 11, 1953, and the time of the alleged adultery as July 4, 1953. Thereafter the indictment makes four averments of essential facts alleging as to the time thereof in each instance that they occurred "then and there." Where multiple dates are used in an indictment, the mere use thereafter of "then and there" without specific reference to the selected date is a fatal defect. *State* v. *Day,* 74 Me. 220; see *State* v. *Hurley,* 71 Me. 354 and *State* v. *Dumais,* 137 Me. 95. A basic right of the respondent rather than a mere technicality is involved, for upon a variance as to time between allegation and proof the respondent may claim surprise and prejudice and seek postponement of his trial. See *State* v. *McNair,* 125 Me. 358 and *State* v. *Morin,* 126 Me. 136. For this reason, therefore, I agree that the indictment involving misprision must be adjudged bad.

The reasons for sustaining exceptions with respect to the indictment in the second case are fully and adequately covered by the opinion of the court.