William R. LOGAN

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

March 23, 1970.

Stearns, Finnegan & Needham, by Thomas E. Needham, Bangor, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for the State.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, and POMEROY, JJ.

DUFRESNE, Justice.

Sentenced to a term in State Prison on his plea of guilty to the offense of attempt to escape from the Penobscot County jail under 17 M.R.S.A. § 1405, the petitioner on April 15, 1969 sought relief from his imprisonment under 14 M.R.S.A. §§ 5502–5508. His post-conviction habeas corpus petition was heard by a single Justice who denied the writ. The instant appeal was taken from such action and is before us for our consideration. We deny the appeal.

The statement of points on appeal under Rule 74(d), M.R.Civ.P., establishes the scope of our review. Petitioner claims the indictment fatally defective as a matter of law, in that 1) it fails to set forth adequately the court or authority by which petitioner's commitment to the Penobscot County jail was made, and 2) it fails to plead any overt act or acts which are an essential element of the offense charged.

The indictment reads in pertinent part as follows:

"THE GRAND JURY CHARGES:

That on or about December 8, 1968, in the County of Penobscot and State of Maine, WILLIAM R. LOGAN, while being lawfully detained in the Penobscot County Jail, did attempt to break from and out of said jail and go at large, while the said WILLIAM R. LOGAN was being held in the Penobscot County Jail for failure to recognize with two sufficient sureties in the amount of $20,000 after having been bound over by the District Court, District Three, Division of Southern Penobscot on November 26, 1968, to the January Term of the Penobscot County Superior Court on the charge of breaking, entering and larceny in the nighttime."

The statute, 17 M.R.S.A. § 1405, under which the accusation against the petitioner was brought, reads as follows:

"Whoever, being lawfully detained in any jail or other place of confinement, except the State Prison, breaks or escapes therefrom, or attempts to do so, shall be punished * * *"

Lawful detention in a jail or other place of confinement is an essential element of the statutory offense of attempted escape therefrom. Smith, Petr. v. State, 1950, 145 Me. 313, 75 A.2d 538. Although the instant indictment states in the very terms of the statute that the attempted escape from the Penobscot County jail occurred while the accused was lawfully detained therein, such general description of the detention without more would be insufficient to make out a prima facie case of the commission of the crime charged. Berger v. State, 1951, 147 Me. 111, 83 A.2d 571. See, also, Smith, Petr. v. State, supra; Duncan, Petr. v. State, 1962, 158 Me. 265, 271–272, 183 A.2d 209. To satisfy the demands of our State and Federal constitutional provisions and of our Rule 7(c) of the Maine Rules of Criminal Procedure, the indictment must contain such plain, concise and definite allegations of the essential facts constituting the intended offense as shall adequately apprise an accused of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise. State v. Charette, 1963, 159 Me. 124, 188 A.2d 898; State v. Bull, 1969, Me., 249 A.2d 881. But as indicated in *Duncan,* supra, the allegations "while being lawfully detained in the Penobscot County jail" are not to be taken alone; they must be read in the setting of the entire indictment, all parts of which must be considered.

We do admit that our system of criminal jurisprudence has been the subject of much criticism, because of common law requirements of exactness mandating the formulation of criminal accusations at times in formalistic technical niceties seemingly unnecessary and very much misunderstood by the general public. Recognizing the need to break away from some of the rigidity of the criminal technocracy of the common law, this Court in State v. LaFlamme, 1917,

116 Me. 41, 43, 99 A. 772, 773, declared that if the meaning of an indictment is clear so that the accused is thereby informed of the precise charge which he is called upon to meet, verbal inaccuracies, grammatical, clerical or orthographical errors, which are explained and corrected *by necessary intendment* from other parts of the indictment are not fatal.

On the other hand, the common law rule that anything material in the description of the substance, nature and manner of the offense must be charged by direct and positive averments and cannot be supplied by intendment or implication was given full recognition, notwithstanding the fact that the accused from the totality of the description of the intended offense could not possibly be misled in his conclusion respecting the exact crime charged. See, State v. Michaud, 1955, 150 Me. 479, 114 A.2d 352; State v. Faddoul, 1933, 132 Me. 151, 168 A. 97; State v. Beattie, 1930, 129 Me. 229, 151 A. 427; State v. Paul, 1879, 69 Me. 215. In State v. Couture, 1960, 156 Me. 231, 163 A.2d 646, this Court held an indictment faulty, which did not in express language or in equivalent positive terms, as in the instant indictment, allege that a mittimus had been issued to authorize the detention of the respondent pending his delivery by the Sheriff to the Superintendent of the Reformatory for Men, even though the indictment did contain the information that the respondent was lawfully detained in the county jail following a sentence to a term in the Reformatory and the issuance by the Court of a commitment to the Sheriff to deliver the respondent forthwith to the Superintendent in execution of sentence. This Court noted the impact of the charge of the presiding Justice in *Couture* to the effect it could be considered as an established fact, that the respondent was delivered to the Sheriff pursuant to a mittimus, but we said the indictment did not say so, undoubtedly as a result of the established rule requiring description of the accusation in positive terms and not by implication or intendment.

■ Notwithstanding the strict common law rule of positiveness, our Court has indicated in State v. Charette, supra, more flexibility than the common law concept would seem to permit. One of the objects of an indictment is to furnish the respondent with a *reasonable* recital of the accusation, said this Court in *Charette*. An accused has the right to insist that the facts alleged to constitute the crime shall be stated in the indictment against him with that *reasonable* degree of fullness, certainty and precision requisite to enable him to meet the exact charge against him. State v. Doran, 1904, 99 Me. 329, 331, 59 A. 440; State v. Munsey, 1916, 114 Me. 408, 96 A. 729.

■ Where the description of the accusation gives the accused a clear identification of the intended offense and readily indicates the statute under which the indictment was found, no further specification need be laid. For such reason, an indictment charging the negligent and careless shooting of another while hunting, without setting forth the particulars of the negligent conduct, was held good in State v. Euart, 1953, 149 Me. 26, 98 A.2d 556, even though the statutory terms of negligently or carelessly shooting are definitely conclusional in character. Again, in State v. Haapanen, 1930, 129 Me. 28, 149 A. 389, we sustained a complaint for the sale of intoxicating liquors, even though without the disclosure of a buyer in the complaint, the fact of the sale had to be read in by implication. Similarly, in State v. Snowman, 1900, 94 Me. 99, 46 A. 815, an indictment was held good which used the conclusory statutory phrase of engaging in the business of guiding without any particulars of the exact acts intended. See, also, State v. Warner, 1967, Me., 237 A.2d 150.

In our recent case of State v. Harriman, 1969, Me., 259 A.2d 752, we were confronted with an indictment for breaking arrest which asserted the placing of the defendant under arrest by a police officer duly authorized to make arrests, but did not state as in Schoen v. State, 1968, Me., 244 A.2d 815, that the alleged offense for which Harriman had been arrested was committed in the presence of the arresting officer. Such factual circumstance was implied from the language of the indictment "and the said Rodney A. Harriman being then and there in the lawful custody of the said Charles J. Erickson, Jr. [the officer]." We then concluded that our former decisions, based upon the application of the common law rule that, in criminal charges, recitals of the necessary elements of the crime intended had to be made by direct and positive averments and could not be supplied by intendment or implication, were no more controlling, since such common law standards of pleading had at least to that extent been abrogated by the adoption of our Maine Rules of Criminal Procedure. Even though the terms "lawful custody" and "lawful detention", as stated in *Schoen,* supra, may be viewed as legal conclusions, they are not meaningless. They convey to the accused the sense that his custody or detention was acquired in accordance with the provisions of law applicable to the circumstances recited in the indictment. Coupled with the averment that the arrest for the offense of operating a motor vehicle while under the influence of intoxicating liquor was made by a police officer duly authorized to make arrests, the statement, that at the time of breaking arrest the defendant was in the lawful custody of the officer, by indirection and implication necessarily supplied the fact that the offense had been committed in the presence of the arresting officer. The defendant could not have been misled and the identity of the offense charged was clear.

■ It is our considered judgment that an indictment for an attempted escape from lawful detention must at least set forth the facts underlying the incarceration so that from the totality of the recitals in the indictment the legality of the detention may appear. The present indictment recites that the defendant attempted to break

from and out of the Penobscot County jail and go at large, while being lawfully detained therein for failure to recognize with two sufficient sureties in the amount of $20,000 after having been bound over by the District Court, District Three, Division of Southern Penobscot on November 26, 1968 to the January Term of the Penobscot County Superior Court on the charge of breaking, entering and larceny in the nighttime. We take notice that the Judge of the District Court as the magistrate therein is by law empowered to bind over and hold an accused to answer in the Superior Court under Rule 5(c), M.R.Crim.P., upon the finding of probable cause, and even though the procedure to be used when the accused is unable to furnish the required bail is not specifically provided therein, Form 2 in the Appendix of Forms to the Rules of Criminal Procedure supplies the judges of the district courts with the sufficient format, Rule 58, M.R.Crim. P., to properly perform their duties. The suggested form reads in material parts as follows:

"After hearing (The defendant having waived hearing) it appeared to the Court that there is probable cause to believe the offense set forth in the complaint on file herein has been committed and that the defendant has committed it.

It is ordered that the defendant _____ personally appear at the Superior Court to be held at _____ in and for the County of _____ on the _____ Tuesday of _____ next, to answer to the accusation contained in said complaint and abide by the orders of the Court.

It is ordered that the defendant is hereby committed to the custody of _____ who shall without needless delay remove the defendant to the County Jail in the County of _____ and deliver him into the custody of the keeper thereof who shall keep the defendant in his custody in said jail until the defendant gives bond in the amount of

_____ dollars with (out) _____ (sufficient) sureties to personally appear as ordered above, or he be otherwise discharged by due course of law.

District Court Judge"

Thus, the acceptable binding-over process spells out all three necessary ingredients of a lawful detention resulting from the failure to furnish bail under the circumstances of the instant case, 1) the finding of probable cause, 2) the order to hold the accused to answer to the accusation and 3) his commitment to jail until he gives bail.

■ There is a legal presumption that official acts ‚or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was done in compliance with the requirements of law, until the contrary is made to appear. Treat v. Inhabitants of Orono, 1846, 26 Me. 217; Snow v. Weeks, 1883, 75 Me. 105; Inhabitants of Wellington v. Inhabitants of Corinna, 1908, 104 Me. 252, 71 A. 889; Bishop v. Inhabitants of Town of Hermon, 1913, 111 Me. 58, 88 A. 86; Benson v. Inhabitants of Town of Newfield, 1938, 136 Me. 23, 1 A.2d 227.

■ Aided by the underlying circumstances set forth in the indictment, out of which the detention of the defendant arose, such as the defendant's failure to recognize with two sufficient sureties in the amount of $20,000 after having been bound over by the District Court, Division of Southern Penobscot, on November 26, 1968 to the January Term of the Penobscot County Superior Court on the charge of breaking, entering and larceny in the nighttime, and further aided by the legal presumption of correctness of action or performance of duty by a public officer when the law pre-requires the doing of certain acts or the finding of certain facts, the allegation of lawful detention should and does necessarily import to an accused of reasonable and normal intelligence the information that

in the binding-over procedure the Judge of the District Court not only did find probable cause in support of his holding the accused to answer in the Superior Court to the accusation, but also that he committed him for removal to the county jail until the required bond be posted. From the totality of its recitals, the accused may readily conclude the existence of the omitted facts as a fair inference and reasonable intendment from the mere reading of the indictment, to the same extent as if these unexpressed facts were stated therein. See, State v. Bushey, 1902, 96 Me. 151, 51 A. 872.

■ The defendant's other contention that the indictment is legally inadequate for failure to allege any overt act towards the commission of the attempted jail escape is equally unmeritorious.

Initially, may we indicate that the petitioner was indicted under 17 M.R.S.A. § 1405, *the specific statute* which provides "[w]hoever, being lawfully detained in any jail or other place of confinement, except the State Prison, breaks or escapes therefrom, *or attempts to do so,* shall be punished by imprisonment * * *." [Emphasis supplied.] Petitioner was not being prosecuted under *the general statute,* 17 M.R.S.A. § 251, which provides "[w]hoever attempts to commit an offense *and does anything towards it,* but fails or is interrupted or is prevented in its execution, where no punishment is expressly provided for such attempt, shall, * * * be imprisoned * * *." [Emphasis added.] These two enactments from the express terms of the general statute are mutually exclusive. We recognize that in section 1405, the statute does not qualify the attempt to escape by adding thereto "and does anything toward it" as section 251 does.

The issue before us is whether it is essential to the validity of an indictment under section 1405 to allege the overt acts relied upon as constituting the attempt to escape. This Court in State v. Doran, 1904, 99 Me. 329, 59 A. 440, 105 Am.St.Rep. 278, respecting indictments for attempts to commit offenses generally (our present section 251), ruled that the overt act done towards the commission of the substantive offense charged had to be set out. In reaching its conclusion, our Court seems to have stressed the generality of meaning which it then attached to the term "attempt" as used in the statute. It quoted at length from Wharton's Criminal Law, some of which is herein pertinent:

" 'Attempt is a term peculiarly indefinite. It has no prescribed legal meaning. It relates from its nature to unconsummated offenses. * * * Attempts may be merely in conception or in preparation, with no causal connection between the attempt and any particular crime. * * * In an indictment for an attempt it is essential to aver that the defendant did some act which directed by a particular intent, which must be averred, would have apparently resulted in the ordinary and likely course of things in a particular crime. * * * To constitute an attempt, there must be something more than mere intention or preparation. There must be some act moving directly towards the commission of the offense after the preparations are made. * * *' "

■ As stated in Doran, supra, and State v. Sullivan, 1951, 146 Me. 381, 82 A.2d 629, an attempt by judicial standards means more than mere intention or preparation. In criminal terminology it conveys the necessary concept of action beyond mere preparation moving directly towards the commission of the substantive offense. The legislative omission from section 1405 of the qualifying phrase of section 251 "and does anything towards it" would seem to indicate that the term "attempt" in and of itself as used in section 1405 in connection with escapes from jail implies not only an intent to do the act itself of escaping, Moody v. Lovell, 1950, 145 Me. 328, 75 A.2d 795, but also the doing of acts beyond mere preparation in active implementation of the intended purpose of escaping jail. A charge

of attempt to escape from jail under section 1405 means more than a mere design on the part of the accused to break jail or mere preparation in anticipation of the execution of such a plan, and a person so indicted, in terms of attempt only, is as fully advised of what the indictment charges and of the crime he is alleged to have committed as if the overt acts had been set forth therein.

 The *Doran* rule, applicable in the case of general attempt statutes such as 17 M.R.S.A. § 251, does represent the weight of authority. See Annotation at 7 Ann.Cas. 139 at page 140; Turner v. State, 1930, 100 Fla. 1078, 130 So. 617; Commonwealth v. Peaslee, 1901, 177 Mass. 267, 59 N.E. 55. Its rationale was well stated by the Connecticut Court in State v. Wilson, 1862, 30 Conn. 500, at page 504: "If it be said that the words 'attempt to steal' imply it [intent] sufficiently, the conclusive answer is, that they equally imply an overt act of endeavor, for that is equally an element of the attempt; and if either element of the offense may be left to implication, both may be, and a general averment of an attempt to steal, or to rob, or other attempt, would in such cases be sufficient. This can not be permitted in justice to the accused, nor consistently with the rule always substantially adhered to, that the want of a direct allegation of any thing material in the description of the nature, substance or manner of the offense, can not be supplied by intendment or implication." In Thompson v. People, 96 Ill. 158, 161, the Court said that "if the averment of a mere attempt was all that is required, the accused could never know what acts would be relied on to prove the attempt, and would be liable to surprise." In State v. Harriman, 1969, Me., 259 A.2d 752, supra, we departed from the traditional technicalities of the common law which required that criminal accusations be couched solely in positive and direct averments and that nothing material in the description of the substance, nature and manner of the offense could be supplied by intendment or implication. In the spirit of *Harriman,* we refuse to extend the *Doran* rule in cases of attempts under 17 M.R.S.A., § 1405. If the accused desires protection against surprise respecting the overt acts constituting the intended proof of the manner of his attempted escape, he may secure the precise nature of such proof by requesting seasonably the filing of a bill of particulars as provided in Rule 7(f), M.R.Crim.P. Schoen v. State, Me., 244 A.2d 815.

We are mindful that in Briggs v. State, 1956, 152 Me. 180, 126 A.2d 563, and Vigue v. State, 1968, Me., 243 A.2d 59, our Court has overruled a similar contention as raised herein on the basis of waiver. We preferred disposing of the issue on a broader plane.

The entry will be

Appeal denied.

WEATHERBEE, J., did not sit.