**STATE of Maine**

v.

**Michael E. KING.**

Supreme Judicial Court of Maine.

April 6, 1977.

Vernon I. Arey, Asst. Atty. Gen., Augusta, for plaintiff.

Shiro & Jabar by Burton G. Shiro, N. Paul Gauvreau, Waterville, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

On November 19, 1975, in a jury-waived trial, defendant Michael E. King was found guilty of violation of 21 M.R.S.A. § 1580(8), forgery of an absentee ballot. Defendant seasonably submitted motions for judgment of acquittal, new trial and arrest of judgment pursuant to M.R.Crim.P. 29, 33, and 34 respectively. He appeals from denial of these motions.

We sustain the appeal.

In the June, 1974 primary election in Somerset County, defendant's wife, Ruth King, and the then County Attorney's wife, Sonja Veilleux, opposed one another for the Democratic nomination for County Treasurer. For about eight years, defendant had been engaged in the gathering of absentee ballots during elections, and he became involved in this activity in the 1974 primary as well. Sometime in May of 1974 he visited the Maplecrest Nursing Home in Madison, Maine, having been asked by the chairman of the Skowhegan Board of Registration to pick up an absentee ballot from Vivian Woodbury, a patient at the Home. There is considerable evidence in the record to the effect that Mrs. Woodbury had suffered a sudden severe episode of confusion on or about May 1, 1974, although some witnesses, including Mrs. Woodbury's cousin and a staff nurse, testified that she had experienced periods of lucidity at least throughout the months of May and June and perhaps during some weeks in July.

Although she had a long-standing reputation as a staunch Republican, Mrs. Woodbury informed King, at the time of his first visit to her, of her wish to register as a Democrat, apparently in order to vote for King's wife. King prepared her registration and enrollment cards and secured an absentee ballot for her, and he returned to the Home about two weeks later. King stated that Mrs. Woodbury was very tired and confused at that time, and that she no longer desired to vote at all. He testified that he honestly believed that it was his duty to keep secret not only the way the absentee party had voted, but also the very fact of whether such party had voted at all. For this reason, King claims, he sealed the blank ballot in the return envelope and, with Mrs. Woodbury's permission, wrote her name on the envelope. He then allegedly returned the envelope to the Town Clerk, without informing the Clerk that the ballot

was blank. The trial Justice apparently attached much importance to this act of defendant. In making its finding, the court said:

> Common sense dictates to me that it's unrealistic to place an unmarked ballot in an envelope, and have somebody do the useless act of taking that folded ballot, throwing it into a ballot box with thousands of others to be counted. Consequently, I find that that led me to the belief that you did in fact forge the name of Vivian Woodbury, and I find you guilty of that offense.

Defendant raises several points on appeal, but we deal only with those involving the indictment itself since they are sufficient to require reversal of this case.

■ The indictment upon which defendant was convicted reads as follows:

THE GRAND JURY CHARGES:

That on or about the 23rd day of May 1974, in the County of Somerset, and State of Maine, the above named defendant, Michael E. King, did feloniously *forge the name of Vivian Woodbury, a* citizen and *voter* in the Town of Madison, *on an absentee ballot* for the June 1974 primary election, a copy of the face of the envelope containing the absentee ballot is attached hereto and made a part hereof. (emphasis added).

The reference statute, 21 M.R.S.A. § 1580(8) provides:

> Whoever commits any act described in this section shall be punished by a fine of not more than $2,000 or by imprisonment for not more than 2 years, or both.
> 8. Forging or altering absentee ballots or applications therefor.
>
> A person who *forges* or alters *the name of a voter on an absentee ballot* or the application therefor (emphasis added).

Comparing the above statutory provision with the language of the indictment, we observe that the indictment is couched in the terms of the statute. Under the ordinary and general rule, "an indictment for a statutory crime is sufficient where it charges in the words of the statute." *State v. Crouse*, 117 Me. 363, 364, 104 A. 525, 526

(1918). *Accord, State v. Chick*, Me., 263 A.2d 71 (1970); *State v. Michaud*, 150 Me. 479, 114 A.2d 352 (1955).

■ However, the above general rule applies *only* when the statute itself fully sets out the facts and describes the offense intended to be created by the Legislature; the offense must be "fully, directly and expressly alleged, without any uncertainty or ambiguity." *State v. Crouse, supra* at 364, 104 A. at 525, *citing Commonwealth v. Welsh*, 7 Gray 324, 327–28 (Mass.1856).

We said in *State v. Euart*, 149 Me. 26, 29, 98 A.2d 556, 558 (1953) that:

> *[i]f the words of the statute are vague or indefinite, it will be necessary to set out* [in the indictment] *the specific acts of the accused*, in order that it may appear that the acts come within the statutory prohibitions. (emphasis added).

*Accord, State v. Good*, Me., 308 A.2d 576 (1973); *State v. Charette*, 159 Me. 124, 188 A.2d 898 (1963); *State v. Michaud, supra;* *Smith v. State*, 145 Me. 313, 75 A.2d 538 (1950). Therefore, determination of the sufficiency of an indictment couched in statutory terms involves initially a careful examination of the statute under which the indictment is drawn.

■ Our responsibilities when faced with such an indictment are well-established:

> [I]n deciding upon a demurrer to a complaint or warrant charging a statutory offense, it is the *first duty of the court to carefully examine the statute under which the complaint or indictment is drawn, with a view of ascertaining the intention of the Legislature* and the evil which that body desired to correct. The *next consideration is whether the Legislature expressed its intention in language sufficiently full, certain, and precise*, so that the person of average intelligence who may be subject to the inhibition pronounced by the statute may understand and obey. If, when tested by the court, both examinations result affirmatively and the complaint or warrant follows the language of such a statute, it should not be held defective upon captious or hypercritical grounds. (emphasis added).

*State v. Munsey*, 114 Me. 408, 410, 96 A. 729, 730 (1916).

Applying the above test to the facts of the instant case, we first examine section 1580(8) and attempt to ascertain the intent of the Legislature. We readily observe that the section makes no mention of forgery or alteration of return *envelopes.* Rather, the proscription is against forging or altering of names of voters on absentee *ballots* or applications. Obviously, names of voters do not appear on the ballots, but only on the envelopes. From this, we may draw one of three conclusions: that 1) the Legislature intended "ballot" to include the envelope; or 2) the Legislature intended to proscribe only the forging of names of voters on applications or envelopes (in which case the forging of actual ballots would perhaps be covered under another section such as 21 M.R.S.A. § 1579(7) which makes it a misdemeanor to falsify a ballot); or 3) the Legislature intended to proscribe only the forging of applications or actual ballots (in which case the forging of envelopes would perhaps be indictable under the general forgery statute, 17 M.R.S.A. § 1501).

That the first of the three possibilities is the intended one is not as obvious as the State would have us believe. An examination of the entire statutory scheme of the election law indicates that the Legislature has continually treated the ballot and the envelope as two separate documents, as for example in 21 M.R.S.A. § 1252(2–A) which speaks of "[t]he return envelope in which the absentee ballot is to be placed . . ." Moreover, 21 M.R.S.A. § 1252(1) states: "[a]n absentee ballot must be identical in all respects to the regular ballots used at an election, except that the words 'Absentee Ballot' must be printed conspicuously on both sides of the folded ballot." Since a regular ballot does not include an envelope, one can infer from section 1252(1) that an absentee ballot likewise would not include an envelope.

█ *State v. Binnette,* Me., 224 A.2d 834 (1966) involved a statute which made it a criminal offense to deface, falsify or suppress a ballot or checklist. We were faced there with the issue of whether an application for an absentee ballot was included within the word "ballot" as used in the statute. We said:

> We can only conclude that the legislature has not seen fit to make it a criminal offense to sign, without authority, the name of another upon an application for an absentee ballot. . . . If the legislature deems it wise or necessary to impose penal sanctions for the falsification of an application, it should so provide in clear and unmistakable terms. *Id.* at 835–36.

Similarly, in the instant case, it might be said that if the Legislature intended to impose penal sanctions for the falsification of an envelope, then it should have so provided in "clear and unmistakable terms." We must bear in mind that penal statutes are to be strictly construed, especially those which, as in the instant case, create felonies. *State v. Millett,* 160 Me. 357, 203 A.2d 732 (1964); *Smith v. State, supra; State v. Blaisdell,* 118 Me. 13, 105 A. 359 (1919). A statutory offense cannot be created by inference or implication. *State v. Peacock,* 138 Me. 339, 25 A.2d 491 (1942). To state affirmatively that "ballot" as used in section 1580(8) necessarily and obviously includes the return envelope could indeed be viewed as the creation, by inference or implication, of a statutory offense of forging a return envelope.

█ Yet, let us assume *arguendo* that the State is correct: that the legislative intent was to include envelope in its use of the word "ballot," and that the Legislature intended to proscribe forging of envelopes, or of envelopes and ballots. Under the second step of *Munsey* we must now ask whether the Legislature expressed that intention in "language sufficiently full, certain and precise, so that the person of average intelligence . . . may understand and obey." We answer in the negative. The language is obviously not sufficiently full, certain and precise—if it were, there would be no question as to whether the Legislature intended to proscribe forgery of ballots, envelopes or both. Having thus failed

the second test under *Munsey*, the indictment cannot simply reiterate the words of the statute, but rather the statutory words must be accompanied by a statement of the facts, circumstances and specific acts which will adequately inform defendant of the charge against him. *State v. Thibodeau*, Me., 353 A.2d 595 (1976); *State v. Michaud, supra; State v. Euart, supra.* The instant indictment is totally devoid of such particularity of facts and circumstances.

■ The test to be applied to determine the sufficiency of an indictment is

whether a respondent of reasonable and normal intelligence would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise. *State v. Charette, supra*, 159 Me. at 127, 188 A.2d at 900.

*See also State v. Philpot*, Me., 365 A.2d 122 (1976); *State v. Bull*, Me., 249 A.2d 881 (1969); *State v. Beckwith*, 135 Me. 423, 198 A. 739 (1938). In this case, not only has King been inadequately informed of the nature of the crime, but in addition it is quite possible that he would not be able to make use of his conviction in the future as a basis of a plea of former jeopardy, since the exact crime for which he has been convicted remains unclear.

To aggravate the problem, we observe that there is a variance between the purport and tenor clauses in the indictment itself: The purport clause (wherein the instrument is described in narrative form) accuses King of forging the name on an *absentee ballot*, yet the tenor clause (which consists of an exact copy, xerox or typed facsimile) states that "a copy of the face of the *envelope* containing the absentee ballot is attached hereto and made a part hereof." (emphasis added).

■■ We have said that whenever practicable in indictments for forgery, the forged instrument should be set forth according to its tenor. *State v. Talbot*, 160 Me. 103, 198 A.2d 163 (1964); *State v. Witham*, 47 Me. 165 (1859); *State v. Bonney*, 34 Me. 383 (1852). If the instrument is unattainable, then that fact should be so stated in the indictment and the reason for its unavailability should be distinctly averred. *State v. Bonney, supra. See generally* 37 C.J.S. *Forgery* § 57 (1943). If the State intended to indict for forgery of a ballot, it should have stated the reason the ballot itself was not attached in the tenor clause. By not so stating but instead attaching the envelope, it has created a variance which in this case is not only confusing but fatal.

■ We recently said that a variance is immaterial when

the indictment supplies sufficient information to apprise the defendant of the actual charge against him thus avoiding any possible prejudice and protects him against a subsequent prosecution for the same offense. *State v. Nappi*, 369 A.2d 230 (1977) *quoting State v. Kimball*, Me., 359 A.2d 305, 307 (1976).[1]

In the instant case it is clear that the indictment does *not* supply sufficient information to apprise defendant of the charge, nor does it protect against subsequent prosecutions. We cannot say whether he has been convicted of forgery of a ballot, an envelope or both, and the variance serves only to further add to the already existing confusion. The variance is material and prejudicial, and it cannot be disregarded under M.R. Crim.P. 52(a).[2]

Inasmuch as we find the indictment wholly insufficient to sustain the conviction, the entry must be

Appeal sustained.

All Justices concurring.

---

1. We recognize that the variance involved in *Nappi* was between the indictment and the proof, rather than the purport and tenor of an indictment. However, we believe that the quoted language is relevant to either type of variance.

2. M.R.Crim.P. 52(a) provides:

   (a) *Harmless error.* Any error, defect, irregularity or *variance* which does not affect substantial rights shall be disregarded. (emphasis supplied).