**Frederick R. SEELEY**

v.

**STATE of Maine and Paul K. Vestal, Jr.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1981.

Decided June 26, 1981.

Lyman L. Holmes (orally), Machias, for plaintiff.

Charles K. Leadbetter, Michael E. Saucier (orally), Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN,[*] and CARTER, JJ.

GODFREY, Justice.

Frederick R. Seeley appeals from an order of the Superior Court dismissing his petition for a writ of habeas corpus under 14 M.R.S.A. § 5501 (1980). In November of 1976, Frederick Seeley, brandishing a firearm during a family argument, shot and killed his granddaughter and seriously wounded his son-in-law. On January 5, 1977, the grand jury in Washington County returned two indictments charging the peti-

---

[*] Glassman, J., sat at oral argument and in the initial conference but died prior to adoption of this opinion.

tioner with first degree homicide, 17–A M.R.S.A. § 201 (Supp.1976), and aggravated assault, 17–A M.R.S.A. § 208 (Supp.1976). After the jury was impaneled and trial commenced, the prosecutor agreed to drop the two indictments in return for which the petitioner agreed to plead guilty to two informations charging him with the crimes of third degree criminal homicide, 17–A M.R.S.A. § 203 (Supp.1976), and aggravated assault, 17–A M.R.S.A. § 208 (Supp.1976). On April 11, 1977, after holding a Rule 11 hearing on the guilty pleas, the Superior Court accepted the pleas and continued the case for sentencing. On April 27, 1977, judgment was entered and the petitioner sentenced to concurrent terms of 15 years at the Maine State Prison.

Over two years after his convictions, Seeley filed a petition for a writ of habeas corpus. After assignment by the Chief Justice, appointment of counsel, the filing of several amendments to the petition, and the filing of the state's answer, a hearing was held in Superior Court before a single justice of the Supreme Judicial Court. On December 27, 1979, the justice dismissed the petition.

Seeley's appeal raises several issues, only three of which require the consideration of this Court. First, Seeley contends that the sentence imposed in 1977 was illegal because 17–A M.R.S.A. § 1252(4) (Supp.1976), a provision elevating the class of a crime for purposes of sentencing when the crime is committed with the use of a dangerous weapon, was not properly applicable to aggravated assault. Second, if section 1252 was not applicable, Seeley argues that his conviction for third degree homicide must be vacated since the class of the underlying crime, aggravated assault, was not A, as section 203 required, but B. Finally, Seeley claims that his guilty pleas to both informations in the Rule 11 hearing were not made knowingly and voluntarily. We sustain the appeal in part.

1. By P.L. 1977, ch. 510, § 78, the legislature added the last sentence of the current § 1252(4):

I.

*Application of Section 1252(4) to Aggravated Assault, Section 208*

The information charging the petitioner with aggravated assault read as follows:

On or about the Fifteenth day of November, 1976, in the Town of Robbinston, County of Washington, State of Maine, the above-named Defendant, Frederick Seeley, did intentionally, knowingly or recklessly assault and do serious bodily injury to the person of Joseph Mitchell by means of a firearm, a dangerous weapon.

The elements of aggravated assault at the time of the offense in November, 1976, were set forth in section 208 of the criminal code, which then provided as follows:

1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

A. Serious bodily injury to another; or

B. Bodily injury to another by means of a deadly weapon; or

C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, or the manner or method inflicted.

2. Aggravated assault is a Class B crime.

In November of 1976, section 1252(4) provided as follows:

If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be. In the case of a Class A crime committed with the use of a dangerous weapon, such use should be given serious consideration by the court in exercising its sentencing discretion.[1]

This subsection shall not apply to a violation or an attempted violation of section 208 or to any offense for which the sentencing class is otherwise increased because the actor or an

In 1976, as now, aggravated assault was a Class B offense, while simple assault was a Class D offense. That a dangerous weapon was used in the crime for which the petitioner was sentenced is undisputed. Because use of "a deadly weapon"[2] in subsection 1(B) of section 208 was an element of the offense distinguishing aggravated assault, a Class B offense, from simple assault defined in section 207,[3] a Class D offense, Seeley argues that section 1252(4) should not have been applied to an aggravated assault conviction because it could not have been intended to elevate the sentencing classification of aggravated assault by application of that section.

In response, the state urges this Court to endorse the rationale articulated by the single justice below. The information charging Seeley with aggravated assault alleged facts sufficient to support a conviction under § 208(1)(A). Subsection 1(A) of section 208, in contrast to subsection 1(B), does not require the state to prove the use of a deadly weapon as an element of the offense. Rather, subsection 1(A) requires proof of *serious* bodily injury in contrast to both section 207, defining simple assault, and subsection 1(B), the provisions of which specify mere bodily injury as an element of the crime. The adjective "serious" which modifies "bodily injury" in subsection 1(A) creates a substantive distinction between aggravated assault under subsection 208(1)(A) and either aggravated assault under subsection 208(1)(B) or simple assault under section 207. This distinction being unrelated to the use of dangerous weapons, the habeas justice decided that, under 1976 law, section 1252(4) could be rationally applied to escalate petitioner's sentencing classification on a conviction for aggravated assault under section 208(1)(A) because the information to which the defendant pleaded guilty alleged *serious* bodily injury.

We conclude that section 1252(4) could not be properly applied to escalate the sentencing class of Seeley's aggravated assault, whether it was regarded as a violation of subsection 1(A) of section 208 or a violation of subsection 1(B). In effect, we decide that the 1977 amendment of section 1252(4) clarified rather than changed the meaning of that provision.

The manner in which the code treats the crime of assault reflects a legislative judgment that the punishment should vary according to "the seriousness of the harm caused or the risks to life that are posed by the defendant's conduct." 17–A M.R.S.A. § 207, Comment 1975 (Supp.1976). Use of a "deadly weapon" was the only distinction between the Class D offense of simple assault and the Class B offense of aggravated assault under section 208(1)(B). That distinction reflects a specific legislative determination that use of a dangerous weapon in the course of an assault enhances the risk to life and therefore should constitute an element of a higher crime, deserving of more severe punishment, than simple assault whether the resulting bodily injury is or is not serious. Section 1252(4), by enhancing

accomplice to his knowledge is armed with a firearm or other dangerous weapon.

2. In 1976, the Code used the terms "deadly weapon" and "dangerous weapon" interchangeably. Thus, in 17–A M.R.S.A. § 2(9) (Supp.1976) the terms were given the same definition:

"Deadly weapon" or "dangerous weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is capable of producing death or serious bodily injury. If the actor intentionally presents, in a covered or open manner, a thing as a deadly weapon, it shall be presumed that the thing was a deadly weapon.

We thus attribute no significance to the fact that under 1976 law the term "deadly weapon" was used in § 208(1)(B). Moreover, for purposes of this appeal, we can find no significance in the use, in 1976, of the phrase "by means of" in § 208(1)(B) in contrast to "with the use of" found in § 1252(4). In 1977 the legislature amended § 208 to conform its terminology with that of § 1252(4). P.L. 1977, ch. 510, § 44.

3. Section 207 provides:

1. A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.

2. Assault is a Class D crime.

sentencing classifications, reflects a similar legislative determination for crimes in general.

It cannot be reasonably supposed that, in 1976, section 1252(4) was intended to enhance further the penalty for aggravated assault by means of a deadly weapon. In a case where the bodily injury resulting from an assault was not serious, pleading and proof of the defendant's use of a deadly weapon had the effect of raising from D to B the sentencing class of what would otherwise be simple assault under section 207. Further to enhance the class of sentence for violation of subsection 1(B) of section 208 if no serious bodily injury had been proved, could not have sensibly served any deterrent purpose. Nothing in the legislative history of the code suggests that the legislature regarded defendants convicted of aggravated assault under section 208(1)(B) to be deserving of yet additional punishment for the same factor. It is clear that 1252(4) was not intended in 1976 to reach violations of section 208(1)(B) in cases where serious bodily injury was not pleaded and proved.

However, with respect to a violation of section 208(1)(A), the habeas justice thought that section 1252(4) had been properly applied, under 1976 law, to enhance the sentencing class of Seeley's crime. Regarding Seeley's assault as a violation of section 208(1)(A) because his plea admitted that he had caused serious bodily injury, the habeas justice saw no difficulty in giving play to the punishment enhancement provision of section 1252(4); he thought the purpose of section 1252(4) seemed reasonably well served by the result. There is a difficulty with that position, however, which is obscured by the peculiar feature of this case that petitioner was not convicted after a jury trial but after a plea of guilty as charged in the information.

Under an information or indictment like that in the present case, charging the defendant in a single count with causing serious bodily injury by assault with a deadly weapon, had Seeley been found guilty by verdict of a jury, the sentencing judge could not have determined with certainty that the verdict necessarily implied either a finding that defendant had used a deadly weapon or that serious bodily injury had resulted. The same verdict could have been reached had the jury found guilt in either alternative.

We have held that the use, in jury trials, of special findings in criminal cases is not compatible with traditional practice in Maine. *State v. Heald*, Me., 307 A.2d 188 (1973). A special finding by the jury that defendant used a dangerous weapon is not required in cases where aggravated assault is charged under section 208(1)(B). *See State v. Pinkham*, Me., 384 A.2d 444, 446 (1978). Hence, if the defendant had been tried by jury on the same charge in a one-count indictment,[4] application of section 1252(4) to a conviction for aggravated assault under the indictment in this case would have been impracticable under 1976 law. A general verdict would not have specified the subsection of the aggravated assault section under which the jury found the defendant guilty, and, without such information, the sentencing court could not have determined whether to apply section 1252(4) to enhance the sentencing class of the conviction. In such a one-count indictment for aggravated assault, reciting both serious injury and use of a deadly weapon, the jury's finding of guilt might or might not have implied a finding that the crime was committed by means of a deadly weapon.

We decline to construe section 1252(4), as it stood in 1976, in such a way that its practical application in such a case would have required a significant departure from long-standing traditions of Maine criminal practice before juries. The meaning of section 1252(4) in its application to aggravated assault was at least doubtful in 1976. In view of that doubt, it is appropriate to accord a strict construction to the section,

---

**4.** The Maine Rules of Criminal Procedure expressly permit "[a]llegations in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." M.R.Crim.P. 7(c).

as applied to the information in this case, since it operated drastically to increase penalties. *State v. King*, Me., 371 A.2d 640 (1977). Under 1976 law, section 1252(4) should not have been applied to Seeley's conviction for aggravated assault.

## II.

### *The Third Degree Criminal Homicide Conviction*

▇ Seeley was convicted of third-degree criminal homicide under section 203(1) of the Maine Criminal Code, which, in November of 1976, provided as follows:

> A person is guilty of criminal homicide in the 3rd degree if, acting alone or with one or more other persons in the commission of, or an attempt to commit, or immediate flight after committing, or attempting to commit any Class A crime, or escape he or another participant causes the death of a person and such death is a natural and probable consequence of such commission, attempt or flight.

17–A M.R.S.A. § 203(1) (Supp.1976). Without enhancement of the sentencing classification for his aggravated assault, Seeley was guilty of a Class B crime only. Since we hold that section 1252(4) did not apply to aggravated assault convictions under 1976 law, an element necessary for conviction under former section 203, namely, the commission of a Class A crime, was not proved, and Seeley's conviction for third-degree criminal homicide must be reversed.

## III

### *Sufficiency of the Evidence*

▇ As his final point on appeal, Seeley challenges the sufficiency of the evidence supporting the finding of the habeas justice that the petitioner's guilty pleas were made voluntarily, knowingly, and intelligently. Seeley testified at the post-conviction hearing that his attorneys promised him he would not receive a prison sentence if he pleaded guilty to both informations. Seeley also testified that he did not bring those promises to the attention of the justice presiding at the Rule 11 hearing because he was nervous, depressed and unable to "concentrate on anything" and that he would never have pleaded guilty except for this mental condition. The lawyers who had been attorneys for the state and Seeley in the original Rule 11 proceeding gave rebuttal testimony at the post-conviction hearing.

The findings of fact made by the habeas justice were supported by competent evidence and must be upheld. M.R.Civ.P. 52(a). *Standish v. State*, Me., 320 A.2d 892, 894 (1974). The record shows full compliance by the trial court with Rule 11.

## IV.

### *Disposition on Remand*

The arguments and briefs of counsel on appeal did not address the issue of the proper disposition to be made of this case if the Law Court should come to the conclusions that it has actually reached. Quite possibly, the terms of the mandate that the habeas justice should issue to the Superior Court may depend on facts not now of record, which facts the habeas justice may find it necessary or desirable to determine by a further hearing in the light of our opinion. In particular, it is not clear whether petitioner's plea of guilty to the charge of aggravated assault, though valid in itself as voluntarily entered, should be permitted to continue to stand in view of the invalidity of his plea to third-degree homicide. It is possible that resolution of that issue could be affected by testimony of the parties to the plea bargain concerning their understandings about the interdependence of the two pleas; *i. e.*, to aggravated assault and to third-degree homicide.

If the habeas justice determines that the aggravated assault plea should not be permitted to be given continuing effect, the further question will remain whether the two informations, which were brought as part of the plea bargain, may and should be withdrawn and the state permitted to proceed on the original indictment or to seek a new indictment.

These issues involve questions of the scope of the habeas justice's remedial pow-

ers, under former 14 M.R.S.A. § 5505, to direct further proceedings in the Superior Court, which questions the habeas justice should resolve in the first instance, perhaps with the assistance of briefs and argument of counsel.

Because of these and possibly other unresolved questions, our mandate in this case gives the habeas justice unusual leeway in formulating his ultimate order to the Superior Court. It is clear in any event, however, that the judgment of conviction for third-degree homicide must be vacated and that, should the conviction for aggravated assault be permitted to have continued effect, the sentence for that crime must be one appropriate for a Class B offense.

The entry is:

Appeal sustained with respect to sentencing on the judgment of conviction for aggravated assault, 17–A M.R.S.A. § 208 (Supp.1976);

Appeal sustained with respect to the judgment of conviction for criminal homicide in the third degree, 17–A M.R.S.A. § 203(1) (Supp.1976);

Appeal denied with respect to the sufficiency of the evidence supporting the finding that the petitioner's guilty pleas were made voluntarily, knowingly, and intelligently.

Remanded to the habeas justice for further proceedings consistent with the opinion herein.

All concurring.